JAY BURNS BAKING COMPANY ET AL., APPELLANTS, V.
SAMUEL R. MCKELVIE, GOVERNOR OF THE STATE OF
NEBRASKA, ET AL., APPELLEES.

FILED JUNE 12, 1922.   No. 22452.

1. **Weights and Measures:** LEGISLATIVE POWER.  The legislature in the exercise of police power may establish reasonable minimum and maximum standards of weights for loaves of bread.

2. **Constitutional Law:** POLICE POWER.  The legislature is presumed to act with full knowledge of all facts essential to valid legislation, when it adopts a regulation in the exercise of police power.

3. ———: BURDEN OF PROOF.  If plaintiffs assail legislation as unreasonable, the burden is on them to prove every fact essential to a determination of that issue in their favor.

4. **Food:** WEIGHTS FOR BREAD: REGULATIONS.  The use of wax-paper or other means to retard evaporation of moisture in bread may be required for the purpose of keeping it in a good state of preservation for 24 hours as an incidental result of a police regulation establishing standards of minimum and maximum weights for loaves of bread.

5. **Constitutional Law:** POLICE POWER.  The exercise of police power for the public welfare may inconvenience individuals, increase their labor, and decrease the value of their property.

6. **Evidence:** WEIGHTS FOR BREAD: TESTS.  Tests to prove the unreasonableness of a tolerance of two ounces to the pound in excess of standards of weights for loaves of bread for 24 hours after it is baked, as not allowing a sufficient margin for loss of weight by evaporation of moisture, are not conclusive, in absence of proof that reasonable precautions were taken to retard evaporation by the use of wax-paper for wrappers or by other means.

7. **Constitutional Law:** FIXING WEIGHTS FOR BREAD.  Standard minimum and maximum weights for loaves of bread of one-half pound, one pound, one and one-half pounds, and exact multiples of one pound, with a tolerance of two ounces to the pound in excess of standard maximum weights, *held* not shown to be void as unreasonable, or as discriminatory, or as depriving plaintiffs of the equal protection of the laws.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE.  *Affirmed.*

*Montgomery, Hall & Young,* for appellants.

*Clarence A. Davis, Attorney General,* and *C. L. Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, ROSE, ALDRICH, DAY and FLANSBURG, JJ.

ROSE, J.

This is a suit for an injunction to prevent the enforcement of the legislative act of 1921, providing: "Every loaf of bread, made or procured for the purpose of sale, sold, exposed or offered for sale in the state of Nebraska, shall be the following weights, avoirdupois: ·One-half pound, one pound, one and one-half pounds, and also in exact multiples of one pound, and of no other weights." Laws 1921, ch. 2. A rate of two ounces to the pound, and no more, in excess of the maximum standard weights is tolerated by the act. Unreasonableness of the regulation or impossibility of complying with the standards fixed by the legislature is the principal plea for an injunction.

The Jay Burns Baking Company, plaintiff, is a Nebraska corporation with a capital stock of $252,000. It manufactures bread for commercial purposes in Omaha and distributes its products in Nebraska and surrounding states. Its annual output of bread is estimated at 10,000,000 pounds, valued at $1,000,000. The other plaintiffs are engaged in the same enterprise on an extensive scale. Plaintiffs sue for themselves and for others similarly situated. The act in question is in the following form:

"Section 1. It shall be the duty of the department of agriculture to enforce all provisions of this act. It shall make or cause to be made all necessary examinations and shall have authority to promulgate such rules and regulations as are necessary to promptly and effectively enforce the provisions of this act.

"Section 2. Every loaf of bread, made or procured for the purpose of sale, sold, exposed·or offered for sale in the state of Nebraska, shall be the following weights, avoirdu-

pois: One-half pound, one pound, one and one-half pounds, and also in exact multiples of one pound, and of no other weights. Every loaf of bread shall be made of pure flour and wholesome ingredients and shall be free from any injurious or deleterious substance. Whenever twin or multiple loaves are baked, the weights herein specified shall apply to each unit of the twin or multiple loaf.

"Section 3. A tolerance at the rate of two ounces per pound in excess of the standard weights herein fixed shall be allowed, and no more; provided, that the standard weights herein prescribed shall be determined by averaging the weight of not less than twenty-five loaves of any one unit and such average shall not be less than the minimum nor more than the maximum prescribed by this act. All weights shall be determined on the premises where bread is manufactured or baked and shall apply for a period of at least twenty-four hours after baking; provided, that bread shipped into this state shall be weighed where sold or exposed for sale.

"Section 4. Any person, firm or corporation violating any of the provisions of this act, shall be punished by a fine of not less than ten dollars nor more than one hundred dollars or by imprisonment in the county jail for not more than thirty days; provided, however, that upon the second and all subsequent convictions for the violation of any of the provisions of this act such offender shall be punished by a fine of not less than fifty dollars nor more than one hundred dollars, or by imprisonment in the county jail for not more than ninety days." Laws 1921, ch. 2.

The legislation is challenged on the ground that it violates the fourteenth amendment to the federal Constitution, providing that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;" that it violates section 3, article I of the Nebraska Constitution, providing, "No

person shall be deprived of life, liberty, or property, without due process of law;" that it violates section 1 of the Nebraska bill of rights, protecting "life, liberty and the pursuit of happiness."

On the issues raised by the pleadings, plaintiffs took the position that, owing to physical conditions, such as humidity and temperature, and the natural process of evaporation, varying the weight of loaves in the baking pan, in the oven, and in storage, the manufacture and distribution of bread for commercial purposes on a large scale were impracticable without violating the legislative act and subjecting the manufacturers, however conscientious and law-abiding, to fine and imprisonment, and that therefore the regulation was unreasonable, unconstitutional and void. On this phase of the case experiments covering considerable periods of time were made. Testimony was adduced by both sides at great length. After a full hearing the trial court sustained the legislation and dismissed the suit. Plaintiffs have appealed.

The manufacture of bread as an article of commerce is of course a legitimate enterprise and those engaged therein are protected in their constitutional rights. At the same time bread is a necessity of life in universal use without regard to poverty or wealth, class or station. Society as a whole is interested in the quality, quantity, condition, and distribution of the manufactured product. The police power of government extends to these subjects for the protection of public health and welfare. The loaf is the usual form in which the food reaches the consumer. The individual purchaser of a day's supply of bread makes too small an investment to justify litigation for the protection of his rights, if wronged, but he must have food in any event. A standard weight exacted by the state is a safeguard against fraud and imposition.

It is conceded that plaintiffs can comply with the minimum standards, "one-half pound, one pound," and "one and one-half pounds," and "exact multiples of one pound," because dough enough to prevent short weights can be

used. Plaintiffs admit that legislation fixing a minimum weight has been sustained. It is earnestly argued, however, that they cannot limit the maximum weights to the standards fixed by the legislature with a two-ounce toler- ance or margin only, for the reason that natural and un- avoidable changes in the weights of loaves, owing to at- mospheric conditions at different times and places, ex- ceed two ounces to the pound. The maximum is denounced by plaintiffs as unreasonable and as not serving any use- ful purpose. Attention is directed to the proposition that variances in the weight of a loaf at different times are due to the evaporation of moisture alone—a natural process which does not affect nutriment or take anything of value from consumers of bread. The intention of the legisla- ture in fixing a maximum is obvious, when the purpose of the statute is considered. The legislation goes beyond a remedy for short-weight loaves and establishes standards of weights for bread to protect the public from fraud and imposition. As already stated the standards are one-half pound, one pound, one and one-half pounds, and "exact multiples of one pound." It is to prevent a loaf of one standard from being increased in size until it can be readily sold for a loaf of a larger standard that a maximum weight is fixed. The test is reasonableness. In a former opinion this language was used:

"A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not invalid simply because it may affect in- cidentally the exercise of some right guaranteed by the Constitution. In all matters within the police power some compromise between the exigencies of public health and safety and the free exercise of their rights by individuals must be reached. The test in such cases is whether the regulation in question is a *bona fide* exercise of the police power or an arbitrary and unreasonable interference with the rights of individuals under the guise of police regula- tion." *In re Anderson*, 69 Neb. 686.

It is shown that water or moisture, subject to evapor-

ation, is an element of weight in bread at every stage from wheat in the field to the manufactured product in the market. This was no mystery to the legislature and a margin or tolerance of two ounces to the pound for evaporation in 24 hours after baking was allowed. The presumption is that the legislature acted with full knowledge of all facts and conditions essential to valid legislation of this kind. That department of the government was without limit in sources of knowledge and in the means of obtaining information. The burden of proving unreasonableness was on plaintiffs. If they are entitled to equitable relief, their tests and proofs must establish their plea without omitting any facts or circumstances essential to the determination of the issue in their favor.

Of course the legislature cannot require bakers to manufacture a product which will retain exactly the same amount of moisture for 24 hours in spite of the evaporation caused by natural processes operating in varying degrees of intensity outside of human power, owing to changing conditions in climate, altitude, atmosphere and temperature. The statutory margin or tolerance being two ounces to the pound, can bakers, for example, make a loaf 18 ounces in weight that will weigh not less than 16 ounces 24 hours after it is baked? The tests and proofs on behalf of the state tend to show that the regulation is reasonable and can be observed at all times. It is fairly inferable from the evidence adduced by plaintiffs that compliance with the regulation is practicable most of the time, but that tested by their experiments as made, there are periods when the operation of natural laws will prevent compliance with legislative requirements. There are a number of reasons, however, why the tests made to prove unreasonableness should not be accepted as conclusive. If correctly understood, these tests were made with bread manufactured in the regular course of business, without any attempt to change ingredients or processes or to retard evaporation of moisture in loaves by the use of wax-paper or other means. There is testimony, however, that the chang-

ing of ingredients to prevent evaporation would impair the quality of the bread and make it unsalable. It is a well-known commercial custom to wrap loaves of bread in paper adapted to that purpose, and the proofs show that evaporation and absorption are thus retarded. Containers to protect commodities from atmospheric changes are familiar articles in trade and commerce. The act of the legislature does not fix prices but leaves bakers free to make reasonable charges for bread wrapped in inexpensive wax-paper for its preservation in transportation and in the markets. Perishable fruits, composed principally of water, grow in the humid tropics, uniting moisture, light, heat, air and other elements of nature in processes more wonderful than the baker's art. Such fruits are transported to the arid north and there distributed to consumers in good condition during hot seasons. This result is accomplished by retarding the natural agencies of decay and by the care required in the channels of trade and commerce. Precautions to retard evaporation of moisture in bread for the purpose of keeping it in a good state of preservation for 24 hours may be required as an incidental result of a police regulation establishing standards of maximum weights for loaves of bread. Palatableness, a quality demanded by the public, is affected by excessive evaporation, if food value is not. The exercise of police power for the public welfare may inconvenience individuals, increase their labor, and decrease the value of their property. The liberty of a citizen to consult his own tastes in selecting a lawful vocation and in conducting a legitimate business is limited by the obligation which his citizenship imposes upon him to respect the right of the public to be protected by the police power of the government. The evidence does not prove that, if reasonable means or precautions are taken by plaintiffs and other bakers to retard evaporation, they cannot comply with the act of the legislature, or that the regulation is unreasonable.

It is further argued that the legislation is not uniform in its operation, that it discriminates between resident and

In re Estate of Bartlett.

nonresident bakers, and deprives plaintiffs of the equal protection of the laws.

This argument is based on provisions that bread of resident bakers shall be weighed where manufactured, while bread shipped into the state shall be weighed where sold, and that tests shall be made by averaging the weight of not less than 25 loaves of a unit. In this connection plaintiffs insist that they manufacture bread on a large scale where 25 loaves of a unit are available at their bakeries for tests, while nonresident bakers, shipping into the state bread in quantities less than 25 loaves of a unit, and local bakers making less than 25 loaves of a unit at a time, are not disturbed by tests. It does not appear that the legislation goes beyond reasonable classifications for the purpose of exercising the police power. The law operates uniformly on all of a class and in these respects is valid under familiar principles of constitutional law.

AFFIRMED.