Submitted on briefs November 6, 1946; argued and re-submitted
February 4; affirmed March 4, 1947

# CITY OF PORTLAND *v.* STEVENS

(178 P. (2d) 175)

*Francis F. Yunker,* of Portland, for appellant.

*L. E. Latourette,* City Attorney, and *M. C. Rushing,* Deputy City Attorney, both of Portland, for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and HAY, Justices.

HAY, J.

Lena Stevens was charged in municipal court with violation of an ordinance of the city of Portland. The municipal court, holding that the ordinance in question was unconstitutional, dismissed the case. The city appealed to the circuit court for Multnomah County. In that court, the case was tried upon a written stipulation of facts, and the defendant was found guilty and sentenced to pay a fine of $25. She has appealed to this court.

The following is the ordinance upon which the prosecution was based:

"It shall be unlawful unless expressly authorized by ordinance for any person on any street or at or from any doorway, window or other place so as to be visible (sic) from any adjacent street, by gesture, pose or word of any kind, to solicit any person on such street to enter any storeroom or other room or place, or, by any means whatever, to entice any such pedestrian or other person upon the street to enter such storeroom, room or place. The word 'entice' shall not apply to the advertising of any business activity or enterprise conducted under official license or permit or which is of a known lawful character."

The only error assigned is that the ordinance is violative of the due process clause of the Federal Constitution (Art. I, XIV Amendment). However, at our request, counsel also briefed and argued the questions of the right of the city to have appealed to the circuit court from the municipal court's judgment, and the defendant's right to prosecute this appeal from the judgment of the circuit court.

In 1903, the legislature enacted a charter for the city of Portland. Special Laws of Oregon, 1903, p. 1. Such charter (sections 328 and 329) created a municipal court for the city, and gave such court, inter alia, jurisdiction over all crimes defined by city ordinances, and, within the city, the jurisdiction and authority of a justice of the peace and committing magistrate. Moreover, it granted to the city (section 336) the right to appeal to the circuit court from the judgments of the municipal court in criminal actions. Section 336 reads, in part, as follows:

"Except as hereinafter stated, appeals may be taken and shall be allowed from final judgments rendered in the municipal court in all actions, both civil and criminal, under the same circumstances, on the same conditions, in the same manner, and with like effect that, under the laws existing at the time of the rendition of any such judgment, appeals may be taken, and shall be allowed from final judgments rendered in similar actions in justice's courts. Any defendant who is convicted of any crime defined or created by this charter, or of a violation of any ordinance, rule, or regulation of the City of Portland, and is sentenced to any imprisonment or to pay a fine exceeding $20, may * * * appeal to the circuit court of Multnomah County, * * *; and the city may appeal to said circuit court from any final judgment in any such

criminal action by serving upon the defendant therein, or his attorney, and filing in said municipal court a written notice of appeal, within five days from the date of the rendition of such final judgment.''

In 1913, the city, under the Home Rule provisions of the state constitution (Art. IV, section 1A), amended the 1903 legislative charter. In so doing, it re-enacted, as "charter ordinances", several sections of the 1903 charter, including section 336 above quoted. It is contended that the city, by adopting the initiative charter of 1913, lost the right of appeal in criminal cases, and that its attempt, by the "charter ordinance" device, to retain such right was unavailing.

■■ The grant to a municipality of the right to appeal to a state court from judgments of the municipal court vests the municipality with a species of extraordinary authority or power not generally included within the powers of local self-government. Extraordinary powers, operating beyond the usual limits of municipal power, have been called by this court "extramural", as distinguished from "intramural" powers, or those which are confined within and extend no further than the corporate limits. *State ex rel. v. Port of Astoria*, 79 Or. 1, 17, 154 P. 399. Before an extramural power may be exercised by a municipality, permission to exercise it must first be granted either by the people of the whole state, acting through their reserved initiative powers, or by the legislature. Ibid., at p. 19.

■ The circuit court is a state tribunal. A municipality cannot, either by initiative charter or by ordinance, vest in a state court jurisdiction to hear appeals

from judgments of a municipal court. *La Grande v. Municipal Court,* 120 Or. 109, 251 P. 308.

In the case of *In re Shaw* (1918) 88 Or. 174, 171 P. 896, it was held by this court that the jurisdiction and authority of a justice of the peace, conferred upon the municipal court of Portland by the legislative charter of 1903, had never been withdrawn. Such authority, be it observed, is likewise an extramural authority. The holding of the Shaw case was reiterated in *In re Application of Boalt,* 123 Or. 1, 11-16, 260 P. 1004. The validity of those "charter ordinances" which related to matters purely of an intramural sort had already been established before the Boalt case was decided. *Robertson v. Portland,* 77 Or. 121, 149 P. 545; *Portland v. Blue,* 77 Or. 131, 149 P. 548; *Spencer v. Portland,* 114 Or. 381, 235 P. 279. Boalt contended that the city, by adopting the initiative charter of 1913, had deprived the municipal court of its *ex officio* authority of a justice of the peace. It was held that it was not the intention of the framers of the initiative charter, or of the people in adopting it, either to abolish the office of municipal judge or to divest such officer of the *ex officio* authority of justice of the peace. This was considered to have been plainly indicated by the language of section 283 of the 1913 charter, which transmuted into charter ordinances certain sections of the 1903 charter, including those creating the municipal court and defining its jurisdiction. Section 329 of the 1903 charter, which granted jurisdiction and authority as *ex officio* justice of the peace to the municipal court, was held not to have been affected by the 1913 initiative charter, but, on the contrary, to have continued in full force and effect as a statute of the state.

■ On the authority of the Boalt case, we hold that section 336 of the 1903 charter, which granted to the city the right of appeal to the circuit court from judgments of the municipal court in criminal cases, (which section likewise was adopted by the 1913 charter as a charter ordinance), remains valid and effective as a legislative enactment. The circuit court, therefore, had jurisdiction over the city's appeal in the case at bar.

In *State ex rel. v. Portland*, 65 Or. 273, 285, 133 P. 62, it was said that the effect of the adoption by the 1913 charter of certain sections of the 1903 charter, as charter ordinances, was to repeal those sections as parts of the charter and to reenact them as ordinances. This expression is, of course, to be construed with reference to those particular provisions of the 1903 charter with which the case was concerned. Those provisions had to do with municipal elections and the choice of municipal officers, matters of purely municipal concern, as to which ample power of legislation was reserved to the people of the city under section 1a, Art. IV of the constitution. This is true also with respect to the charter provisions discussed in *Robertson v. Portland*, supra, wherein the language of *State ex rel. v. Portland*, supra, is referred to and approved.

There remains to be considered the question of the right of defendant to appeal to this court from the circuit court's judgment of conviction. In *City of Portland v. McSparran* (1942) 169 Or. 377, 129 P. (2d) 65, the defendant, having been convicted in the municipal court of Portland for violation of a municipal ordinance, appealed to the circuit court, and, after trial therein, was again convicted. We commented that, in such cases, the circuit court was in effect a municipal court of appeal, but that there was

no authority, either in the general statutes or in the city charter, for an appeal to this court. See also *Portland v. White,* 106 Or. 169, 172, 211 P. 798.

■■ Chapter 114, General Laws 1927, as amended by chapter 196, General Laws 1929 (section 95-2802, O. C. L. A.) had granted to any person, convicted in any municipal court of an offense made punishable by any city charter or ordinance, the same right of appeal to the circuit court as was allowed from judgments of conviction in courts of justices of the peace, except when the municipal charter prohibited such appeals. In the year following our decision in the *McSparran case,* supra (and, no doubt, actuated thereby), the legislature, by chapter 277, Oregon Laws 1943, further amended the 1927 act. By such latest amendment, the right of appeal from the municipal to the circuit court was awarded in cases involving the constitutionality of a charter provision or ordinance, regardless of any prohibition in charter or ordinance. Such amendment provided further that an appeal would lie, where a constitutional question is involved, from the judgment of the circuit court to the supreme court in the same manner as appeals in other criminal cases are taken. The act, by strict construction, applies only to a person who has been *convicted* in a municipal court. The defendant herein was merely discharged in that court, but, on appeal, was convicted in the circuit court. The statute, being remedial, should receive a liberal construction in furtherance of the right of appeal. 2 Am. Jur., Appeal and Error, section 7; *Spencer v. City of Portland,* supra (114 Or. 381, 391, 235 P. 279); *Dibble v. David Hodes Co.,* 132 Or. 596, 599, 277 P. 820, 286 P. 554. A liberal construction should regard a defendant who, having been acquitted or discharged in a municipal

court, is thereafter, on appeal by the city, convicted in the circuit court, as one who has been convicted in a municipal court. Under such construction, the defendant herein had the right of appeal to this court, and the case is properly before us.

■ It is suggested that an appeal by the city contravened the constitutional guaranty against double jeopardy. Art. I, section 12, Oregon Const. It may be assumed, for the purposes of this discussion, that, in Oregon, a prosecution for violation of a municipal ordinance is regarded as being a criminal, or quasi-criminal, rather than a civil action, and that such a violation is an "offense" within the protection of the constitutional safeguard. *Portland v. Erickson,* 39 Or. 1, 6-8, 62 P. 753. The fact, however, is that the defendant was not put in jeopardy in the municipal court. The record shows affirmatively that she was neither acquitted nor convicted in that court upon the merits, but that, on her own motion, the case was dismissed upon the ground that it was "based upon an unconstitutional and invalid ordinance". Such motion was, in effect, a demurrer, and the discharge of the defendant thereon will not support a plea of former jeopardy. *State v. Littschke,* 27 Or. 189, 40 P. 167; section 26-847, O. C. L. A.; *State v. Brunn,* 22 Wash. (2d) 120, 154 P. (2d) 826, 157 A. L. R. 1049.

At the trial in the circuit court the facts were stipulated as follows:

"That A. P. Baumgarten is and at all times mentioned herein was a duly qualified and appointed police officer of the City of Portland;

"That while patrolling S. W. 1st Avenue at about 12:15 P. M. of the afternoon of March 16, 1945, said officer saw a man, walking about 25 feet

ahead, stop opposite the doorway of the storeroom or place located at 1111 S. W. First Avenue, in the City of Portland, Oregon, then pass on;

"That said officer walked forward and when he came even with said doorway, saw the defendant herein standing in said doorway;

"That said defendant called out to said officer 'Hey, mister,' and beckoned said officer to enter the storeroom or place there located;

"That said officer enquired if the defendant meant him, and that the defendant replied, 'Yes, come over here';

"That the officer turned, approached defendant and asked what she wanted;

"That the defendant said 'Come on in and I'll tell your fortune';

"That the officer declared he doubted if she could tell a good fortune and asked how much it would cost;

"That defendant replied that she could tell a good fortune and would for fifty cents;

"That thereupon said officer came up to the doorway and this defendant then took hold of his arm and led him inside and behind a curtain which separated the back of said storeroom or room from public view."

The point is made that the ordinance upon which the prosecution was based is unconstitutional, in that it is indefinite, arbitrary, and capricious in its terms, and without reasonable relation to any object sought to be obtained.

The ordinance exempts from its operation the enticing of persons to enter storerooms, etc., through "the advertising of any business activity or enterprise conducted under official license or permit or which is of a known lawful character". With this exception, it prohibits any person, by gesture, pose or word of any kind, from any place visible from an adjacent

street, from soliciting any person on such street to enter any storeroom or other room or place, or, from enticing, by any means whatever, any person upon the street to enter such storeroom, etc. The prohibition of the ordinance, therefore, applies generally to the solicitation of any person upon the street to enter a storeroom or other room or place, and also the enticement thereto of any person, by any means other than the advertisement of a lawful business or enterprise.

■■ The words "solicit" and "entice", as used in pleadings, import "an initial, active and wrongful effort". *State v. Norris,* 82 Or. 680, 682, 162 P. 859. "Solicit" is defined as "to importune"; "to endeavor to obtain by asking or pleading". "Entice" is defined as "To draw on by exciting hope or desire; to allure; attract; as, the bait *enticed* the fishes. Often in a bad sense: To lead astray; to induce to evil; to tempt; as, the sirens *enticed* them to listen". Merriam's Webster's New International Dictionary, 1926 ed.

■ It is competent for the municipality to prohibit the solicitation or enticement of persons upon a street to enter any premises, and, to justify such prohibition, it is not necessary that the solicitation or enticement be for an evil purpose. An ordinance of New York prohibited persons from standing on a sidewalk or street in front of any store, or in the entrance or hallway of any store, for the purpose of calling the attention of passersby to goods, or to solicit patronage, or to entice or persuade passersby to enter such store. The prohibited acts were not in themselves evil, but the validity of the ordinance was sustained by the court. *People on Complaint of Crennan v. Patrick,* 14 N. Y. S. (2d) 249, 251. It was presumed that the ordinance was a proper exercise of the law-making

authority. It was held to be manifest that there was an evil to be remedied, and that the ordinance had a reasonable relation to such evil. We quote from the opinion:

"The defendant urges that the law is unconstitutional and that it is arbitrary, discriminatory, vague and indefinite. I cannot agree with such a contention. The law applies generally to the entire city and to all business. Its evident purpose is to promote public convenience as well as to preserve the peace, and defines an unauthorized use of the city streets or acts tending to bring about an unauthorized use of the streets. It is a proper exercise of the police power of the municipality. The police power is not limited to regulation designed to promote public health, public morals or public safety, or to the suppression of what is offensive, disorderly or unsanitary, but extends to so dealing with conditions that exist to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity. Matter of Wulfsohn v. Burden, 241 N. Y. 288, page 298, 150 N. E. 120, 43 A. L. R. 651.

"* * * *

"The provisions of this law are clear and definite, and prohibit and eliminate the various practices and devices of individuals commonly known as pullers-in to solicit business from pedestrians on the public streets. * * *"

In an earlier New York case, the validity of a similar ordinance was sustained. The court held that it was reasonable, and tended to "provide against such conduct and acts which may lead to disorder and disturbance." *People v. Phillips,* 147 Misc. 11, 263 N. Y. S. 158.

Appellant apparently concedes that the ordinance would be valid if it were restricted in operation to

solicitation such as practised by "pullers-in", or to solicitation to enter a bawdy-house or a place where gambling or other forms of vice were being carried on. It is clear, however, that, in the interest of the public health, safety or welfare, the city may regulate any activity whereby travelers upon the public streets may be subjected to the importunities of persons, whether well-or evil-intentioned, who would solicit or entice them to enter adjacent storerooms or other premises. It cannot be doubted that solicitation or enticement of that sort, practised on or adjoining public streets, may be a public nuisance. The ordinance here challenged is a reasonable exercise of the police power. It regulates a manifest evil, and it is of general application to all who, by solicitation or enticement, importune wayfarers to enter premises for any purpose whatever. Such importunity is "an undesirable invasion of, or interference with, the full and free use of the highways by the people in fulfilment of the public use to which streets are dedicated." *Valentine v. Chrestensen*, 316 U. S. 52, 54, 86 L. Ed. 1262, 62 Sup. Ct. 920.

■ Appellant suggests that the ordinance might be invoked to prohibit the most innocuous activities, such as a mother's beckoning and calling her child home. The ordinance, however, should receive a sensible construction, and its terms should be so limited in application as not to lead to absurd or unjust consequences. It will be presumed that the lawmakers intended to except from its operation all actions the prohibition of which would be absurd. *Fish v. Bishop,* 176 Or. 210, 213, 156 P. (2d) 204; *State v. Gates,* 104 Or. 112, 123, 206 P. 863; *Williams v. Arkansas,* 217 U. S. 79, 89, 54 L. Ed. 673, 30 Sup. Ct. 493, 18 Ann. Cas. 865.

Every intendment is to be made in favor of the validity of a statute, and, if there is doubt respecting its constitutionality, the statute must be upheld unless it is clearly repugnant to some provision of the constitution. *Herbring v. Lee,* 126 Or. 588, 596, 269 P. 236, 60 A. L. R. 1165; 11 Am. Jur., Constitutional Law, section 128. The same rule of construction is applicable to municipal ordinances. *State ex rel, Erickson v. Sanborn,* 101 Or. 686, 693, 201 P. 430; 11 Am. Jur., Constitutional Law, section 133. If the ordinance may be sustained only in the event that circumstances exist which justify its adoption as a reasonable exercise of the police power, the existence of such circumstances will be presumed. *Pacific States Box & Basket Co. v. White,* 296 U. S. 176, 80 L. Ed. 138, 56 Sup. Ct. 159, 101 A. L. R. 853; *Dinino v. Valentine,* 54 N. Y. S. (2d) 800; *Williams v. Arkansas,* supra; 11 Am. Jur., Constitutional Law, section 131.

In our opinion, the challenged ordinance is constitutional and valid.

It is stated that the defendant is a Gypsy, and that the ordinance was adopted in connection with a drive to rid the city of people of "this nationality". We find nothing in the record, however, to warrant any such contention. The ordinance is general in its application, and singles out no particular race, creed or class.

The judgment of the circuit court was right, and it is affirmed, with costs.