Argued December 4, 1961, reversed and remanded May 16,
petition for rehearing denied June 19, 1962

# STATE OF OREGON *v.* HUDSON HOUSE,
## INC. ET AL
### 371 P. 2d 675

*Charles S. Evans*, Deputy District Attorney, Portland, argued the cause for appellant. On the briefs were Charles E. Raymond, District Attorney, and Desmond D. Connall, Deputy District Attorney, Portland.

*Ronald L. Orloff*, Portland, argued the cause for respondents. With him on the brief were Manley B. Strayer and Hart, Rockwood, Davies, Biggs and Strayer, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

WARNER, J.

On January 11, 1961, the Multnomah County Grand Jury returned the following indictment against defendants-respondents (omitting formal parts):

"HUDSON HOUSE, INC., DBA Luxury Bread Bakery, ROBERT A. HUDSON, President, and FRANK J. BASTASCH, are accused by the Grand Jury of the County of Multnomah and State of Oregon, by this indictment of the crime of BAKING COMMERCIAL BREAD IN PANS WHICH EXCEED THE LAWFUL SIZE committed as follows:

"The said HUDSON HOUSE, INC., DBA Luxury Bread Bakery, ROBERT A. HUDSON, President, and FRANK J. BASTASCH, on or about the 21st day of December, A.D. 1960, in the County of Multnomah and State of Oregon, then and there being, did then and there, in said county, wilfully and unlawfully bake white commercial bread in twin standard loaves in pans which did then and there substantially exceed the dimensions of 9.25 inches by 9.5 inches by 3.5 inches, which said dimensions are specified as the maximum pan size for pans used in baking the aforesaid twin standard loaves, by Department of Agriculture Administrative Order Number AD-646, which said order was duly promulgated and adopted on November 14, 1960 under the authority vested in said Department of Agriculture by ORS 625.209 and ORS 561.190, a copy of which said order was thereafter duly filed with the Secretary of State, the aforesaid bread not then and there being round loaves, French, Vienna, or Rye loaves, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The court sustained defendants' demurrer to the indictment on the ground that the facts stated did not

constitute a crime (ORS 135.630). From the judgment dismissing the action, the state of Oregon appeals.

ORS 625.209 (Oregon Laws 1959, ch 370, § 4), one of the statutes under which the indictment was returned, reads as follows:

"Pursuant to the provisions of ORS chapter 183, the department may promulgate, amend or repeal regulations setting forth the dimensions and size of pans which must be used in Oregon for the baking of bread. The department may take into consideration but is not limited to:

"(1) The laws or regulations of the United States or other states relating to dimensions and sizes of bread pans.

"(2) The customs, practices and problems of the bread baking industry in this state and other states.

"(3) Dimensions and sizes of bread pans reasonably necessary to insure continued fair trade practices in the baking of bread.

"(4) Measures reasonably necessary in order that the consumer will not be deceived or misled by deceptive shapes, dimensions, sizes, contents or the value of loaves of bread."

The other statute upon which the indictment depends as authority for the promulgation of the rules and regulations giving rise to the instant matter is ORS 561.190, which provides:

"The department is authorized and directed to make any and all rules and regulations necessary for the administration or enforcement of any law with the administration or enforcement of which the department is charged, and not inconsistent with the authority with which the department is vested or with any such law. Such rules and regulations shall be compiled and printed in pamphlet form for distribution. The violation of any rule or

regulation made by the department pursuant to this section shall be a violation of the law to which such rule or regulation applies and shall be punishable in the manner provided for violations of such law."

The regulation referred to in the indictment as Department of Agriculture Administrative Order Number AD-646 furnishes the nub of the alleged crime and will be found in the margin.[1]

---

[1] "Department of Agriculture—DIVISION OF FOODS DAIRIES—WEIGHTS AND MEASURES, Agriculture Building, Salem, Oregon—ADMINISTRATIVE ORDER NO. AD-646, RELATING TO BREAD PAN SIZES. Pursuant to authority vested in the State Department of Agriculture, Salem, Oregon, by ORS 561.190 and 625.209, the following rules and regulations relating to the size of the pans in which bread is baked, are hereby promulgated:

"Section 1. Intent and policy.

"In the promulgation of the following regulations, it is the intent of the department to interfere as little as possible with the practices and initiative of the bakers of the state and still carry out the mandate of the legislature as stated in ORS 625.209; namely, 'Measures reasonably necessary in order that the consumer will not be deceived or misled by deceptive shapes, dimensions, sizes, contents or the value of loaves of bread.' It has been determined after careful study and conferences with the baking industry that consumer deception is most apt to occur in the case of bread baked in a rectangular shape.

"Section 2. Definition.

" 'Pan' includes pans, frames, screens or any type of container in which bread is baked in Oregon.

"Section 3. Sizes of pans used for baking standard single loaves.

"Pans used for baking of loaves of bread, in Oregon, shall not exceed the following dimensions (measurements are the inside measurements at the top of the pan):

| | Length | Width | Depth |
|---|---|---|---|
| "(1) 'Standard Loaf' | 9.25″ × | 4.75″ × | 3.5″ |
| (2) 'Standard Large Loaf' | 12.5″ × | 4.75″ × | 3.5″ |
| (3) 'Standard Large Square Loaf' | 8.5″ × | 8.0″ × | 3.5″ |
| (4) 'Standard Large Sandwich Loaf' | 13.0″ × | 4.5″ × | 4.5″ |
| (5) 'Standard Extra Large Loaf' | 13.0″ × | 5.5″ × | 5.0″ |
| (6) 'Standard Extra Large Sandwich Loaf' | 16.0″ × | 4.5″ × | 4.5″ |

The issue raised by the demurrer is the constitutionality of the authority of the State Department of Agriculture to restrict the baking of bread to certain maximum sizes. (See §§ 3 and 4 of Order Number AD-646, supra.)

Defendants contend that under the facts stated in

"Section 4. Sizes of pans used for baking twin loaves.

"Pans used for the baking of twin loaves of bread, in Oregon, shall not exceed the following dimensions (measurements are the inside measurements at the top of the pan):

| | Length | | Width | | Depth |
|---|---|---|---|---|---|
| "(1) Twin 'Standard Loaves' | 9.25" | × | 9.5" | × | 3.5" |
| (2) Twin 'Standard Large Loaves' | 12.5" | × | 9.5" | × | 3.5" |
| (3) Twin 'Standard Extra Large Loaves' | 13.0" | × | 11.0" | × | 5.0" |

"Section 5.

"These regulations do not apply to pans used to bake round loaves or to bake French, Vienna or Rye loaves of bread, unless baked in a pan which gives such loaves a shape which simulates the bread baked in pans regulated by this order.

"Section 6.

"This order and sections 1 to 5 of such order shall be effective November 23, 1960 as postponement of such date could result in serious prejudice to the public interest and particularly to the baking industry of this state. The consumer is being deceived by a recent practice in the baking industry whereby bread ordinarily baked in a smaller pan is being baked in a larger pan with the result that the smaller loaf simulates the larger loaf and in some instances the consumer is actually paying a higher price therefor. Certain bakeries may be required to spend substantial amounts in purchasing new or additional pans unless the practice is eliminated, in order to meet the deceptive competition. To carry out the mandate of the baking industry and the 1959 legislature, and to protect the consumer, immediate rules and regulations are vital and necessary and must be immediately effective.

"State Department of Agriculture Administrative Order No. AD-621, Oregon Administrative Rules, Chapter 603, Section 21.605 is hereby repealed.

"Signed this 14th day of November, 1960.

"J. F. Short, Director

"Approved:
O. K. Beals, Chief
Division of Foods and Dairies—
Weights and Measures"

the indictment ORS 625.209, supra, is in violation of the Fourteenth Amendment of the federal Constitution and Art I, § 20, of the Oregon Constitution. They rest their argument on the claim that: (1) ORS 625.209 arbitrarily prohibits the manufacture of a wholesome article; (2) is an unreasonable and unconstitutional denial of defendants' right to engage in a lawful business; and (3) represents an unconstitutional delegation by the legislature of its law-making power.

The state contends, and we think correctly, that neither the statute in question nor the regulatory order issued pursuant thereto violate any provision of the state or federal constitutions.

■■ Every intendment is to be made in favor of the validity of a statute and, if there is doubt respecting its constitutionality, it must nonetheless be upheld unless it is clearly repugnant to some provision of the constitution. *Greenberg v. Lee,* 196 Or 157, 184, 284 P2d 324, 35 ALR2d 567 (1952). If an act of the legislature would be valid only in the event that certain circumstances would justify its adoption as a reasonable exercise of the police power, the existence of all such circumstances will be presumed unless facts judicially known or proved preclude that possibility. 11 Am Jur 794, Constitutional Law § 131; *Swift & Co.* and *Armour & Co. v. Peterson,* 192 Or 97, 128, 233 P2d 216 (1951); *Portland v. Stevens,* 180 Or 514, 527, 178 P2d 175 (1947); *Borden's Farm Products Co., Inc. v. Baldwin,* 293 US 194, 209, 79 L ed 281, 55 S Ct 187; *Amer. F. of L. v. Bain,* 165 Or 183, 106 P2d 544, 130 ALR 1278, 1286 (1940).

■ Even when a court finds that the subject to which the statute relates is within the scope of the legislative power, the courts, in applying the judicial test

of reasonableness to a statute enacted under the police power, will accord to the legislature a large discretion in determining not only what the public interests require, but also what measures are necessary for the protection of such interests. *Christian v. LaForge,* 194 Or 450, 461, 242 P2d 797 (1952); *Savage v. Martin,* 161 Or 660, 91 P2d 273; *Union Fishermen's Co. v. Shoemaker,* 98 Or 659, 675, 193 P 476, 194 P 854; 16 CJS 962, Constitutional Law § 198, n 87; 11 Am Jur 1081, Constitutional Law § 305.

Much of defendants' argument is predicated upon the false assumption that the statutes and regulations which we presently examine rest upon the element of police power designed to protect the public health.

Public health is, of course, one of the important factors giving rise to the exercise of the police power and very evidently one of the most impelling reasons of the legislation, generally, relating to bakeries. But the business of baking also involves the business of selling, and the business of selling offers opportunities, unless restrained, to employ to the advantage of the baker or retailer, and the disadvantage of the consumer, deceptive devices contrary to what may be "reasonably necessary in order that the consumer will not be deceived or misled by deceptive shapes, dimensions, sizes, contents or the value of loaves of bread." (ORS 625.209(4), supra)

■ The defendants assert at page 11 of their brief that "ORS 625.209 is an absolute prohibition of a wholesome article of food." It is a contention without merit. The wholesomeness of defendants' product is not an issue here. We find nothing in the record challenging the health content of defendants' product nor any warrant to assume that defendants are in any

way prohibited from offering their product to the public, if and when they comply with the pan-size regulation of the Department of Agriculture.

The purpose of the order as expressed therein is to carry out the legislative mandate that regulations be enacted to prevent consumer deception caused by deceptive sizes of bread loaves. We learn from § 6 of Order Number AD-646 the nature of the deception which the order is designed to allay. There, we find a recital of the pressing necessity for the regulation. It reads: "The consumer is being deceived by a recent practice in the baking industry whereby bread ordinarily baked in a smaller pan is being baked in a larger pan with the result that the smaller loaf simulates the larger loaf and in some instances the consumer is actually paying a higher price therefor."

However, conceding arguendo that the public is being denied a wholesome food, if prepared by defendants contrary to ORS 625.209 and rules issued under the authority of that section, the declaration made concerning the public denial of "wholesome food" must fail under the rule announced by this court in *State v. Schuman,* 36 Or 16, 24, 58 P 661, 47 LRA 153, 78 Am St Rep 754 (1899), where it was held that the sale of a commodity may be subject to the exercise of the police power, though its use would not necessarily subvert the morals, impair the health, or disturb the peace of society. In the *Schuman* case the court declared for the validity of a statute making it unlawful to sell or offer for sale any species of trout whether caught in this state or out of it. Followed in *State v. Thompson,* 47 Or 492, 500, 84 P 476, 4 LRA (NS) 480 (1906); *Monroe v. Withycombe,* 84 Or 328, 335, 165 P 227 (1917); *Union Fishermen's Co. v. Shoemaker,* supra (98 Or at 674).

■ The police power is not limited to regulations necessary for the preservation of good order or the public health and safety. It is well established in this state and generally elsewhere that the prevention of fraud, deceit, cheating and imposition is within the ambit of the sovereign's police power. It is a power which may be exercised to protect not only the intelligent and prudent, but also the ignorant and rash. *Swift & Co.* and *Armour & Co. v. Peterson,* supra (192 Or at 127), requiring branding of cattle to protect honest citizens against innocent acquisition of stolen property; *Semler v. Oregon Dental Examiners,* 148 Or 50, 34 P2d 311, affm'd 294 US 608, 78 L ed 595, 55 S Ct 570, prohibiting "bait advertising" by dentists; *State ex rel Bouthillier v. Farrell,* 178 Or 353, 356; 166 P2d 812, 167 P2d 698; *Schramm v. Bank of California,* 143 Or 546, 579, 20 P2d 1098, 23 P2d 327.

In the *Semler* case, supra, the court observed at pages 57-58:

"It is well settled that the legislature may enact laws which tend to prevent the perpetration of fraud although the act prohibited is harmless in itself: *Kirk v. State,* 126 Tenn. 7 (150 S. W. 83, Ann. Cas. 1913D, 1239). The police power is not limited to the prohibition of acts which are malum in se. If the rule were otherwise, the public could never be adequately protected against the evil effects of that large category of acts which, under certain conditions, offer special opportunity to perpetrate fraud and deception. As stated by Freund in his splendid text on Police Power, section 272, 'The police power undertakes to give an ampler protection, both by adopting precautionary measures and by forbidding certain practices irrespective of an actual intent to defraud.'"

See, also, 16 CJS 924, Constitutional Law § 187; 11 Am Jur 1027, Constitutional Law § 273.

■ The power to prevent deception is applicable to the character or quality of goods offered for sale by regulation of the size and weight of loaves of bread. *P. F. Petersen Baking Co. v. Bryan,* 290 US 570, 78 L ed 505, 54 S Ct 277, 90 ALR 1285 (1934); *Jay Burns Baking Co. v. Bryan,* 264 US 504, 68 L ed 813, 44 S Ct 412, 32 ALR 661 (1924); *Schmidinger v. Chicago,* 226 US 578, 57 L ed 364, 33 S Ct 182, Ann Cas 1914B 284, affm'g *Chicago v. Schmidinger,* 243 Ill 167, 90 NE 369 44 LRA (NS) 632, 17 Ann Cas 614; *Jay Burns Baking Co. v. McKelvie,* 108 Neb 674, 189 NW 383, 26 ALR 24; 11 Am Jur 1028, Constitutional Law § 273.

Corwin in his Analysis and Interpretation of the Constitution of the United States, at page 1018, points out in discussing the validity of state statutes preventing fraud in the sale of goods:

"Laws and ordinances tending to prevent frauds and requiring honest weights and measures in the sale of articles of general consumption have long been considered lawful exertions of the police power. * * * [Citing Schmidinger v. Chicago, supra.]

"Similarly, the power of a State to prescribe standard containers to protect buyers from deception as well as to facilitate trading and to preserve the condition of the merchandise is not open to question. * * * [Citing Pacific States Box & Basket Co. v. White, 296 US 176, 80 L ed 138, 56 S Ct 159 (1935).]"

The *Schmidinger* case, supra, involved the violation of a Chicago city ordinance prescribing certain weights, or multiples thereof, in which loaves of bread could be manufactured and sold. Certain bakers were fined for having sold bread in loaves larger than those specified and they thereupon attacked the ordinance under the Fourteenth Amendment. Although this case

involved the regulation of the weight of bread, the language of the decision indicates that the states have broad powers in this area, and that legislation is constitutional as long as it is not arbitrary and unreasonable.

The court pointed out that bread is a product which people depend upon as a necessity of life and thus the making and selling of bread is obviously a trade which may be the subject of police regulation. In answer to the contention that the regulation of bread so that it could only be sold if it conformed to certain prescribed weights was unreasonable, the court said:

"* * * This court has frequently affirmed that the local authorities intrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred. * * *" (57 L ed at 368)

In holding the ordinance valid, the court went on to state the following in response to the argument that in order to obey the ordinance it would be necessary to use 20 ounces of dough to bake a one-pound loaf, due to changes and evaporation after the loaf was baked:

"* * * But inconveniences of this kind do not vitiate the exercise of legislative power. The local legislature is presumed to know what will be of the most benefit to the whole body of citizens. * * * We cannot say that the fixing of these standards in the exercise of the legislative discretion of the council is such an unreasonable and arbitrary exercise of the police power as to bring

the case within the rare class in which this court may declare such legislation void because of the provisions of the 14th Amendment to the Constitution of the United States, securing due process of law from deprivation by state enactments." (57 L ed at 368)

*Pacific States Box & Basket Co. v. White,* supra, is particularly conclusive in our determination and one of interest because of its origin. It was an appeal by the plaintiff from an order of the District Court of the United States for Oregon, dismissing a suit to enjoin the enforcement of an order of the Oregon Department of Agriculture prescribing the use of a certain type of container in marketing berries. (See 9 F Supp 341.) In an opinion by Mr. Justice Brandeis, speaking for a unanimous court, the dismissal by the lower court was sustained. Oregon Code of 1930, §§ 18-2902 and 18-2903, as amended, authorized the Director of Agriculture to fix and promulgate "official standards for containers of horticultural products." Thereafter, regulations establishing the sizes for crates and hallocks for raspberries and strawberries were issued by the director. Plaintiff pleaded substantially the same constitutional violations as does the plaintiff in the matter at bar. The declarations of the court pertinent in application here are:

"* * * The power of a state to prescribe standard containers in order to facilitate trading, to preserve the condition of the merchandise, to protect buyers from deception, or to prevent unfair competition is conceded. Such regulation of trade is a part of the inspection laws; was among the earliest exertions of the police power in America; has been persistent; and has been widely applied to merchandise commonly sold in containers. [Citing case.] Latterly, with the broadening of the field of distribution and the growing use of con-

tainers in the retail trade, the scope of the regulation has been much extended.

"* * * But to fix both the dimensions and the form may be deemed necessary in order to assure observance of the prescribed capacity and to effect other purposes of the regulation. * * *

"* * * Whether it was necessary in Oregon to provide a standard container for raspberries and strawberries; and, if so, whether that adopted should have been made mandatory, involve questions of fact and of policy, the determination of which rests in the legislative branch of the state government. The determination may be made, if the constitution of the State permits, by a subordinate administrative body. With the wisdom of such a regulation we have, of course, no concern. We may enquire only whether it is arbitrary or capricious. That the requirement is not arbitrary or capricious seems clear. * * *

"* * * The order here in question deals with a subject clearly within the scope of the police power. [Citing case.] When such legislative action 'is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary.' [Citing case.] * * *

"* * * But where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies. Compare Aetna Ins. Co. v. Hyde, 275 U.S. 440, 447, 72 L. ed. 357, 364, 48 S. Ct. 174." (80 L ed at 143-146)

The defendants place great reliance upon the case of *Tacoma Bread Co. v. Mankertz,* 186 Wash 392, 57

P2d 1056 (1936). In that case the court held that the state Director of Agriculture exceeded his authority in promulgating a rule similar to AD-646. However, at the time of this decision, the Washington Legislature had only given the Director a limited authority to make rules to prevent the adulteration and misbranding of bread, and the court held that he had no authority to establish standards regulating its quality, purity and strength. Although Washington then had a statute regulating the weight of bread in a manner similar to ORS 625.200, it had no statute which in any way dealt with loaf dimensions. The case adds no weight to the defendants' argument, for, as opposed to the situation in this state, the Washington Legislature had not delegated to the Department of Agriculture the power to regulate the size of loaves and it was upon this point that the case was decided.

It is interesting to note that in the year following the decision in the *Tacoma Bread Co.* case, the Washington Legislature amended its laws by first making it unlawful to sell loaves in forms having the appearance and size of loaves of greater weight, and setting forth maximum dimensions for bread pans in a manner quite similar to that which was adopted in the now-repealed ORS 625.210. The validity of this legislation has never been contested in the state of Washington and was evidently prompted by the *Tacoma Bread Co.* case and particularly by the concurring opinion which inferred that the legislature could constitutionally establish, or delegate to the Director of Agriculture the authority to establish, prescribed standard weights or sizes for loaves of bread. See, also, the recent case of *Clark v. Dwyer,* 56 Wash2d 425, 353 P2d 941 (1960), where the Washington Supreme Court sustained the constitutionality of a statute pertaining to the grading

of apples and restricting the color of apples sold in that state.

It will be observed that ORS 625.209, as did its predecessor ORS 625.210, deals exclusively with the *size* of bread loaves; in addition a standard for the *weight* of bread has also been a subject of regulation by the Oregon Legislature since 1939, loaves being required to weigh between certain allowable ranges, as specified in ORS 625.200, before they can be made or sold in this state. Before the 1959 legislation, bread could be sold under two weight classifications: (1) a "standard" loaf, which could weigh not less than 15 ounces nor more than 17 ounces, and (2) a "standard large" loaf, which could weight not less than 22 and one-half ounces nor more than 25 and one-half ounces. In 1959 a third allowable loaf weight was established, but for our purposes the statute was left unaffected.

We can see no distinction between a regulation requiring that bread loaves comply with certain weight standards and one regulating the size of loaves by standardizing the dimensions of baking pans.

ORS 625.200 defines three forms of bread loaves as "standard," "standard large" and "standard extra large." The maximum and minimum weights are established for each kind. The control of baking pan size may also be viewed as a corollary to the control of weights authorized and approved by ORS 625.200 and as a reasonable device to give an additional assurance against customer deception, especially to those who make their choice of "size" as they see the loaf on display.

As established by the Pacific States Box & Basket Co. case, supra (80 L ed 138), a regulation standardizing the size of containers is constitutional. The only

difference between the facts of that case and those before us now, is that in standardizing the size of berry hallocks the Department of Agriculture was there regulating the *size of the container* in which the product was eventually sold instead of, as here, regulating the eventual *size of the product* itself. We can not agree with the defendants, who attempt to distinguish the two situations by saying that the container regulation did not interfere with the right to sell the product, but merely required that berries be sold in certain prescribed weights and container sizes, whereas ORS 625.209, as they fallaciously argue, completely prohibits the sale of a wholesome article of food. Clearly, neither ORS 625.209 nor the regulation prohibit the sale of bread, but only deceptively-sized loaves.

The mere fact that compliance with the terms of the regulation may be inconvenient will not render the same void. Nor can defendants complain that their business has been injured by a legitimate exercise of the police power for the benefit or protection of the public. *Druzik v. Board of Health of Haverhill,* 324 Mass 129, 85 NE2d 232, 237 (1949); *Pepperidge Farm v. Foust,* 117 NE2d 724, 727 (Ohio 1953).

It is our opinion that the regulation of both the weight and size of bread, in an attempt to prevent deceptive bread baking practices, is legislation bearing a substantial relation to an evil which the legislature has sought to prevent through use of its acknowledged police power. The statute and regulation do not, therefore, contravene the provisions of the Due Process Clause of the Fourteenth Amendment.

The defendants argue that ORS 625.209 is an unlawful delegation of the power to make and declare

laws vested in the Legislature by Art I, § 21, and Art 4, § 1, of our Constitution. They assert that the act, "* * * does not contain any standards which guide or limit the exercise of the power granted to the Department of Agriculture."

We find no merit in this argument. The defendants are concluded by the recent case of *Warren v. Marion County*, 222 Or 307, 353 P2d 257 (1960), and followed in *Van Riper v. Oregon Liquor Control Commission*, 228 Or 581, 590-591, 365 P2d 109 (1961).

■ Defendants cite as a correct rule of law the fact that we must consider a statute by what it authorizes and permits to be done, and, therefore, its constitutionality must be determined by what can be done under it and not what actually takes place. *M & M Co. v. State Ind. Acc. Com.*, 176 Or 35, 45, 155 P2d 933. This rule does not, however, mean that in ascertaining the presence of norms to guide delegated powers, the courts are obligated to examine only the particular section in question. The rule is in fact otherwise, and the entire act in light of its surroundings and objectives must be examined; standards need not be set forth in express terms in one particular section if they can reasonably be inferred from the statutory scheme as a whole. *Re Berardi*, 23 NJ 485, 129 A2d 705, 63 ALR2d 767, 772.

It is difficult to see, as a practical matter, under our present fact situation how any additional standards could be set forth in ORS 625.209 which, as stated in the *Warren* case, "would make any clearer the scope of the delegated power or contribute materially to the protection of a citizen against unwarranted administrative action." (222 Or at 315) See, also, *In Re Petersen*, 51 Cal2d 177, 331 P2d 24, 77 ALR2d 1291, 1298 (1958).

ORS 625.209, in our opinion, states with clarity the purpose for which the rules and regulations are authorized and expresses with equal clarity the requisite standards for the governance of the Director of Agriculture in preparing the same. In *Warren,* the regulations related to a county building code ordinance (ORS 215.055). In the *Van Riper* case, they were designed for the regulation of matters arising under the Liquor Control Act. The standards established by ORS 625.209 are, in our opinion, even more clearly set forth than those approved in the last two cases mentioned.

15. The defendants quote the following statement from *Warren v. Marion County,* supra (222 Or at 314), where the court declared:

> "As pointed out in Davis on Administrative Law, the important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action. 1 Davis, Administrative Law Treatise, §§ 2.10, 2.15, 7.20. * * *"

They observe that the *Warren* case held that the right to appeal provided a sufficient safeguard to persons wishing to contest administrative action and add that no such right is provided under ORS 625.209. They claim this to be a distinguishing factor between *Warren* and the case at bar.

Their conclusion is not an accurate one. To the contrary, we find that a judicial review of the administrative action is afforded as of right. "Putting some words into a statute that a court can call a legislative standard is not a very good protection against arbitrariness. The protections that are effec-

tive are hearings with procedural safeguards, legislative supervision, and judicial review." 1 Davis, Administrative Law Treatise, 108, § 2.08. ORS 625.209 in its opening sentence provides that the regulatory powers therein vested in the department are exercised "Pursuant to the provisions of ORS chapter 183." Chapter 183 comprehends the Administrative Procedures and Rules of State Agencies (ORS 183.010 to 183.510). But respondents argue there is no way to contest the promulgation of the regulation in this matter since it is not a "contested case" as defined by ORS 183.310(2). Aside from the procedure provided by ORS 183.420 et seq., there is provision for notice of proposed action by the agency with an opportunity to be heard prior to the adoption of a regulation (ORS 183.330(3)); and aside from the right of judicial review (ORS 183.480) in "contested cases," ORS 183.400 makes special provision to test the validity of a given rule adopted by the agency by a petition for a declaratory judgment in the manner provided by ORS chapter 28.② ORS 183.400(2) man-

---

② ORS 183.390 authorizes any interested person to petition an agency requesting the promulgation, amendment or repeal of any rule, a right which is not a condition precedent to invoking in aid the provisions of ORS 183.400.

We also note that ORS 183.330(1) requires each agency to adopt rules of procedure and the Department of Agriculture by its order AD-567, dated December 30, 1957, adopted *in toto* the Model Rules of Administrative Procedure In Contested Cases, as promulgated on December 9, 1957, by the Attorney General pursuant to ORS 183.340. It is therein provided that a hearing may be instituted by the petition of any interested person to secure a declaratory ruling by the agency of the applicability to such person of any rule enforceable by the agency (Rule 3A(1)). After sufficient notice, a hearing is provided for before the agency (Rule 7), a petitioner is given the right to present a case or defense (Rule 15(3)), and a record of the proceeding is made (Rule 18). A final decision by the agency, including findings of

dates that "The court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency * * *." Such an application would include the right to any supplemental relief as may be necessary (ORS 20.-080). *Lowe v. Harmon*, 167 Or 128, 115 P2d 297 (1941). All of the constitutional challenges which they advance here could have been seasonably litigated and determined under ORS 183.400, supra. There was a lapse of nearly two months between the date of the adoption of the offending rule and the return of the indictment.

We can not say that the fixing of standard sizes of baking pans in the exercise of legislative discretion is such an unreasonable and arbitrary exercise of the police power as to bring this case within the rare class in which the court may declare such legislation unconstitutional and void. Nor do we find that the statute or rule are discriminatory, nor in restraint of trade, nor of a tendency to create a monopoly, as suggested by defendants.

In conclusion we find much of our own thought expressed as it was by Mr. Justice Burch, speaking for the Supreme Court of Kansas, in *State v. McCool*, 83 Kan 428, 111 P 477, 478:

> "The appellant argues that this statute is an arbitrary, unreasonable, and meddlesome interference with the conduct of a legitimate private business, in which the public welfare is not involved, and consequently that it is unconstitutional and void. It is a matter of common knowledge that the bakery is an institution quite indispensable

---

fact and conclusions of law, is required (Rule 19), and "any party to an agency proceeding who is adversely affected by the final decision may appeal to the circuit court in the form and manner prescribed by law." (Rule 20)

to every city and town. Practically every housewife is compelled to resort to it on frequent occasions, and many constantly depend upon it for that most necessary article of food, bread. Bread is sold by the loaf. The size of a loaf is fairly well established by trade custom, and the price is generally a common price per loaf of the popularly understood size. There are among us to-day persons like those who in the time of Amos made the ephah small and the shekel great and falsified the balances by deceit. Some of them make and deal in bread, and by shrinking the size of their loaves or by other devices they cheat the uncritical and unsuspecting public, which relies upon the prevailing customs. The Legislature found such practices to be sufficiently extensive in this state to need correcting. Therefore every condition essential to a valid exercise of the police power exists. People v. Wagner, 86 Mich. 594, 49 N. W. 609, 13 L. R. A. 286, 24 Am. St. Rep. 141; City of Chicago v. Schmidinger, 243 Ill. 167, 90 N. E. 369.

"The regulations were designed to reach, and do reach, the very evil to be remedied. Price is unregulated. That will regulate itself. But, if a child be sent to the bakery for a loaf of bread, it will return with a loaf of bread. If fraud were to be circumvented at all, it was necessary that the measures taken should be effective; but the regulations adopted are in no sense harsh or oppressive. * * *"

The order of the circuit court is reversed and the cause remanded for such further action as may be appropriate.