Argued and submitted March 31, 1995; resubmitted In Banc January 9, affirmed May 1, petition for review denied October 22, 1996 (324 Or 322)

CITY OF LAKE OSWEGO,
a municipal corporation,
Clackamas County, Oregon,
*Respondent,*

*v.*

$23,232.23 IN CASH,
Motorola pager,
*Defendants,*

*and*

RODNEY S. MITUNIEWICZ,
*Appellant.*

(91-5-372; CA A77119)

916 P2d 865

Jenny Cooke argued the cause and filed the briefs for appellant.

Cynthia L. Phillips argued the cause and filed the brief for respondent.

DE MUNIZ, J.

Edmonds, J., concurring.

Haselton, J., dissenting.

Armstrong, J., dissenting.

## DE MUNIZ, J.

Claimant appeals a judgment forfeiting his interest in defendants $23,232.23 in United States currency and a Motorola pager[1] following an *in rem* forfeiture proceeding. We affirm.

On May 10, 1991, claimant was stopped in Washington County for speeding. He consented to a pat down and told the officers that he had $23,000 in cash. He was handcuffed and searched, and the police discovered a folded paper that they opened. The paper contained tar heroin. The owner of the car later consented to a search, and the police found a plastic bag with a syringe and spoon.

Plaintiff City of Lake Oswego (City) brought this forfeiture proceeding in May 1991 pursuant to Oregon Laws 1989, chapter 791, *as amended by* Oregon Laws 1991, chapter 934 (Act).[2] Trial was in August 1992, and a judgment of forfeiture was entered in September.

The incident also led to the criminal prosecution of claimant in a separate proceeding. In June 1992, he was convicted of, *inter alia,* possession of a controlled substance (heroin). Claimant appealed that conviction, challenging the denial of his motion to suppress. We held that his motion should have been allowed. We held that the heroin was illegally seized, and, therefore, that his statements about his use and possession of heroin were tainted by the illegality. *State v. Mituniewicz,* 125 Or App 41, 864 P2d 1359 (1993). We reversed the conviction for possession and remanded for a new trial.

We first address claimant's arguments that our ruling in the criminal case requires reversal of the forfeiture here. He argues that a prior determination regarding admissibility in a related criminal proceeding is binding in a forfeiture action, *U.S. v. $28,980 in U.S. Currency,* 786 F Supp 899, 901 (D Or 1990), and that evidence derived from an illegal search is inadmissible in a forfeiture proceeding. *One*

---

[1] Claimant abandoned his objection to seizure of the pager.

[2] The chapters were inserted, but not codified, at the beginning of ORS chapter 166. We refer to the section numbers printed there.

*Plymouth Sedan v. Pennsylvania*, 380 US 693, 85 S Ct 1246, 14 L Ed 2d 170 (1965). He contends that, without the evidence that was suppressed in the criminal proceeding, City failed to meet its burden in this forfeiture case of proving that there was probable cause to believe that the property was subject to forfeiture.

■        However, even assuming that claimant is correct, he has waived any objection to admissibility of the evidence here. Claimant stipulated that the finding of facts from the motion to suppress, including that tar heroin was discovered, would be entered in the forfeiture hearing.[3]

We next address claimant's assignment that the trial court erred in finding that City proved the allegations of its complaint. City alleged that

"[o]n or about May 11, 1991, defendants, $23,232.23 in cash and Motorola pager, were used and/or intended to be used to commit and facilitate the:

"1)   possession of heroin, a controlled substance; and/or

"2)   delivery of heroin[.]

"On or about May 11, 1991, defendants, $23,232.23 in cash and Motorola pager, were profit and/or proceeds of delivery of heroin, a controlled substance[.]"

Claimant argues that the only evidence was that the currency was to pay for a kilo of cocaine and that City presented "absolutely no evidence" to support its allegations that the currency was used in the possession or delivery of heroin or was profit from the delivery of heroin.

---

[3] The parties explained the agreement to the court:

"[Claimant's counsel]: I want to make it clear it's my opinion, having done a fair amount of research on the case law, that those findings and order, however much we may disagree with them [are] *res judicata*. This is the incident. These were the findings of fact and conclusions of law. We may not like it, but I think I have to stick with it.

"THE COURT: Fine. So it's received for that purpose.

"[City's counsel]: I believe there is also a stipulation, and it may be contained within that order, but I want to reiterate, that the defendant did, in fact, have tar heroin in his possession on this day.

"[Claimant's counsel]: I'm not disputing that it was tar heroin."

At the forfeiture hearing, the arresting officers testified that claimant originally stated that the source of the $23,000 was from an insurance settlement and the 1981 sale of a house, that he had buried the money because he did not trust banks and that he was going to use the money for a down payment on a house. The officers testified that claimant later told them that a kilo of cocaine would cost $23,000 on the market, and, when the officers confronted claimant with the fact that $23,000 was the amount of money he had and that the money appeared not to have been buried, claimant then told them that he was delivering kilos of cocaine, and the money was in payment.

Claimant denied that he had given that information to the police. His testimony was that the money came from the sale of a farm and from a judgment in a personal injury case and that, when he was stopped, he was on his way to give the money to the seller as a down payment on a house.

The trial court did not find claimant's testimony credible. It found:

> "Claimant did obtain a kilo of heroin from some dealer in Wilsonville and transported it to a party in Vancouver, Washington, travelling through Clackamas and Multnomah Counties, and obtained $23,000 plus in exchange for the cocaine and was coming back to Wilsonville to pay that money to the dealer.
>
> "* * * * *
>
> "[T]he $23,000 that claimant had when he was stopped was from the sale of drugs, whether cocaine or heroin, which claimant was intending to purchase."

City argues that any variance between the allegation that the money was used to facilitate the sale of heroin and the proof that it was used in the sale of cocaine is not material. City argues that, even though the court's findings interrelated heroin and cocaine, the court clearly found that the currency constituted profits and proceeds from the sale of controlled substances. It argues that that is the conduct that is prohibited under Section 2(11)[4] and that it met its burden.

---

[4] Section 2(11) provides:

■ Judicial forfeiture proceedings "shall be governed by the Oregon Rules of Civil Procedure to the extent that they do not conflict with specific provisions of chapter 791, Oregon Laws 1989." Section 7(4).[5] City did not move to amend the pleadings to conform to the evidence. ORCP 23 B. However, under ORCP 12 B,

> "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

■ Before enactment of ORCP, a variance was not deemed material unless it was prejudicial to the adverse party. *Goad v. Maxwell*, 273 Or 553, 556, 542 P2d 488 (1975). The party that asserted prejudice must have been misled or denied a fair presentation of its case. *Tauscher v. Doernbecher Mfg. Co.*, 153 Or 152, 158, 56 P2d 318 (1936); *Stokes v. Brown*, 20 Or 530, 532, 26 P 561 (1891).

The pleadings allege that City's claim of forfeiture arose from the events that occurred on May 11 and that the claim was brought pursuant to Oregon Laws 1989, chapter 791. Under Section 3(6), items subject to forfeiture include

> "[a]ll moneys * * * furnished or intended to be furnished by any person in the course of prohibited conduct, all proceeds of or from prohibited conduct, and all moneys * * * used or intended to be used to facilitate any prohibited conduct[.]"

"Prohibited conduct" includes conduct under ORS 475.992. Section 2(11). ORS 475.992, in turn, makes it a crime to possess, manufacture or deliver *either* cocaine or heroin.

■ Claimant has not demonstrated how the variance between pleading and proof was prejudicial to him. He does not argue that the allegation that the drug involved was heroin, instead of cocaine, misled him or denied him the opportunity to fairly present his case. We conclude that any defect

---

" 'Prohibited conduct' includes violation of, solicitation to violate, attempt to violate or conspiracy to violate any provisions of ORS 475.005 to 475.285 and 475.805 to 475.999 when the conduct constitutes either a felony or misdemeanor as those terms are defined in ORS 161.525 and 161.545."

[5] This proceeding, initiated by the filing of an *in rem* complaint, was not a summary forfeiture to which ORCP does not apply. *See Multnomah County v. One 1984 Chevrolet Corvette*, 115 Or App 276, 837 P2d 559 (1992).

in the pleadings did not affect a substantial right of claimant and that the trial court did not err in finding that plaintiff had proved the allegations of its complaint.

Claimant next argues that the trial court erred in finding that it had jurisdiction and that City had standing to sue for forfeiture. City brought this action in Clackamas County. Section 7(7) provides that the forfeiture action

"shall be commenced and tried:

"(a)    In the case of real property, in the circuit court in a county in which the property is situated; or

"(b)    In all other cases, in the circuit or district court of the county in which the property was seized or the county in which any part of the prohibited conduct took place."

Claimant contends that Section 7(7) is jurisdictional and requires that the forfeiture action against defendant property had to be commenced in the county in which it was seized. Here, that was Washington County. City argues that claimant confuses jurisdiction with venue, and that claimant waived any challenge to venue.

██ Section 7(7) requires only that "any part" of the prohibited conduct is to have occurred in the county where the action is brought. Prohibited conduct includes the delivery of controlled substances. The trial court found that the *res* was the proceeds from the sale of drugs obtained from a dealer in Wilsonville and that claimant traveled through Clackamas and Multnomah counties while transporting the drug to a party in Vancouver, Washington. We do not agree with claimant that that is an insufficient "connection" to Clackamas County so as to preclude the action being brought in Clackamas County.

██ Claimant also argues that City did not have "standing" to bring this action because there is no connection between defendant currency and City, "except that [City] has seized defendant and wishes to keep it." He argues that the lack of nexus means that there is no justiciable controversy between the parties. However, under the forfeiture statutes, the "forfeiting agency" is the party proceeding against the seized property. The forfeiting agency is not required to be the same agency that seized the property.[6] The evidence

_____

[6] Section 2(5) provides:

showed that the Lake Oswego and Tigard Police Departments had an interagency agreement to investigate narcotics violations jointly. City is the political subdivision that accepted the seized property for forfeiture and is processing the forfeiture case. Section 2(5). Under the statute, thus, there is a justiciable controversy between the *res* and City.

We turn to claimant's constitutional challenges. He first argues that the forfeiture proceeding violated the constitutional prohibitions against being placed twice in jeopardy for the same conduct.[7] The double jeopardy guarantee

"has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 US 711, 717, 89 S Ct 2072, 23 L Ed 2d 656 (1969), *overruled on other grounds Alabama v. Smith*, 490 US 794, 109 S Ct 2201, 104 L Ed 2d 865 (1989) (footnotes omitted).

Claimant's argument appears to be directed to the third of these protections—multiple punishments. Relying primarily on *United States v. Halper*, 490 US 435, 448, 109 S Ct 1892, 104 L Ed 2d 487 (1989), he cites the holding:

"[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. We therefore hold that under the Double Jeopardy Clause *a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction* to the extent that the second sanction may not fairly be

---

" 'Forfeiting agency' means the State of Oregon or a political subdivision thereof that has accepted for forfeiture property seized by a seizing agency or that is processing a forfeiture case."

Section 2(13) provides:

" 'Seizing agency' means a law enforcement agency that has seized property for forfeiture."

[7] US Const, Amend V; Or Const, Art I, § 12. Claimant's argument is based on the Fifth Amendment and does not argue that a different test applies under the Oregon Constitution. He also makes no claim that the proceeding violated the former jeopardy statutes, ORS 131.505 *et seq*.

characterized as remedial, but only as a deterrent or retribution." (Citation omitted; emphasis supplied.)

■ However, here, there is no issue of multiple punishments. Although claimant states that "he was convicted and punished for the same conduct that assertedly [gave] rise to the forfeiture here," we reversed claimant's conviction and remanded for a new trial.[8] The record does not show that there were any subsequent criminal proceedings based on the events of May 11.

■ The concurrence would not reach the issue of what effect, if any, the reversal of claimant's conviction for possession might have on the double jeopardy issue, because the forfeiture was based on claimant's delivery of a controlled substance and claimant's conviction was for possession of a controlled substance. The concurrence is correct that double jeopardy does not apply if the same-elements test of *Blockburger v. United States*, 284 US 299, 52 S Ct 180, 76 L Ed 2d 306 (1932), is not met, *U.S. v. Dixon*, 509 US 688, 696, 113 S Ct 2849, 125 L Ed 2d 556 (1993), and that possession and delivery have distinct elements. *Dixon* may also answer claimant's argument that double jeopardy applies because the same events gave rise to both the criminal and forfeiture proceedings. In *Dixon*, the Supreme Court overruled its holding from *Grady v. Corbin*, 495 US 508, 510, 110 S Ct 2084, 109 L Ed 2d 548 (1990), that the government could not institute successive prosecutions based on the same underlying conduct.

■ The analysis of the concurrence could, thus, directly answer the double jeopardy issue here but for the position argued in Judge Haselton's dissent. *But see* ORS 131.515(2). Double jeopardy prohibits multiple prosecutions as well as multiple punishments. It "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 US 184, 187, 78 S Ct 221, 2 L Ed 2d 199 (1957). In *U.S. v. $405,089.23 U.S. Currency*, 33 F3d 1210

---

[8] Even if claimant had been incarcerated after the criminal trial, that incarceration would not constitute punishment for purposes of double jeopardy. *See Pearce*, 395 US at 719 (upon conviction after retrial, punishment already exacted must be fully credited in imposing sentence upon new conviction).

(9th Cir 1994), *amended on denial of reh'g* 56 F3d 41 (9th Cir 1995), *cert granted U.S. v. Ursery*, ___ US ___ , 116 S Ct 762, 133 L Ed 2d 707 (1996), the court considered double jeopardy in the framework of a second proceeding. The government brought criminal and forfeiture proceedings at about the same time, and the defendants were convicted in the criminal case. The forfeiture proceeding continued, and the government filed a motion for summary judgment, relying, in part, on the criminal convictions. The Ninth Circuit noted that double jeopardy, "at its most fundamental level * * * protects an accused against being forced to defend himself against repeated attempts to exact one or more punishments for the same offense." *Id.* at 1215. It rejected the government's contention that the forfeiture proceeding, which was "based on precisely the same conduct addressed in the claimants' criminal case," *id.* at 1216, was separate from the criminal proceeding. It also held that the "entire scope," *id.* at 1220, of the forfeiture statute had to be considered to determine whether the forfeiture constituted "punishment." When the statute was so considered, the court held that it did:

> "*Austin* [*v. U.S.*, 509 US 602, 113 S Ct 2801, 125 L Ed 2d 488 (1993),] thus makes clear that at least three principles are relevant to determining whether a forfeiture constitutes 'punishment.' First, because of 'the historical understanding of forfeiture as punishment,' there is a strong presumption that any forfeiture statute does not serve *solely* a remedial purpose. Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty conduct. Finally, where Congress has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law." *Id.* at 1221 (citation omitted).

The court held that, because the government was attempting to exact punishment in a separate proceeding from the claimant's criminal trials, the forfeiture action was barred by double jeopardy. *Id.* at 1222. The Act here also ties forfeiture to specified offenses and exempts innocent owners. If we accepted the reasoning of the Ninth Circuit, as urged by

Judge Haselton in his dissent, double jeopardy would apply to bar the forfeiture proceeding.

In *U.S. v. Sherrett*, 877 F Supp 519 (D Or 1995), the court considered whether double jeopardy barred a criminal prosecution that followed an administrative forfeiture. The defendants argued that the indictment in the criminal prosecution covered the same criminal conduct for which they were punished in the forfeiture. The government conceded that some of the counts were barred but argued that some were not because they required elements of proof that were not at issue in the civil proceedings.

The court's analysis was made in the light of *Dixon* and *$405.089.23 U.S. Currency*. The court stated that determination of whether defendants were being subjected to double jeopardy "depends on a comparison of the forfeiture allegations and the criminal charges." *Id.* at 523. The court first considered the complaints and supporting affidavits in the forfeiture cases in order to identify the underlying criminal conduct. *Id.* at 525. It then compared the forfeiture offenses with the criminal charges, one of which was conspiracy. *Id.* The court noted that all of the forfeiture cases were brought under 21 USC § 881(a)(6), which authorizes forfeiture of assets used or intended to be used in violating certain statutes. The court concluded that prosecution of the criminal conspiracy charge was barred by double jeopardy:

> "A conspiracy charge can, under certain circumstances, support the forfeiture of property under § 881(a)(6). This was made plain in *$405,089.23*, where the panel ruled that forfeiture of the defendants' property under 21 U.S.C. § 881(a)(6), following their conviction on conspiracy charges, violated the Double Jeopardy Clause. Similar circumstances are present here. The affidavits * * * depict a far-reaching conspiracy among the defendants[.] Presumably, the government could have premised its forfeiture cases on a single offense[.] Instead, the government's pleadings reflect a more inclusive prosecutorial approach[.] As a result, a substantial portion of the government's criminal case against defendants was brought to bear in the forfeiture proceedings, including the allegations of conspiracy. A

review of the forfeiture complaints and supporting documentation compels the conclusion that the conspiracy charge * * * served as a basis for the forfeitures.

"The government maintains that the offense of conspiracy requires proof of an illegal agreement, an element not required to establish a basis for civil forfeiture. It therefore concludes that conspiracy and forfeiture must be treated as separate offenses under *Blockburger/Dixon*. As a matter of law the government's argument is foreclosed by *$405,089.23*. In addition, it cannot be squared with the facts at hand. As I have stated, the government's forfeiture pleadings clearly make a case for conspiracy. If the government were to offer proof of the allegations contained in the affidavits * * * at trial, there is little question that the evidence would support a conviction under 21 U.S.C. § 846. It is immaterial that the government could have constructed its forfeiture cases in a manner that omitted the allegations of conspiracy. It did not do so." *Id.* at 527 (footnotes omitted).

If we accept the reasoning of *$405,089.23 U.S. Currency*, as urged by Judge Haselton, the forfeiture proceeding here would be barred by double jeopardy. Under the Oregon forfeiture provisions, the prohibited conduct that authorizes forfeiture includes violation of "any provisions of ORS 475.005 to 475.285 and 475.805 to 475.999 when the conduct constitutes either a felony or misdemeanor[.]" Section 2(11). Here, the forfeiture complaint sought forfeiture either on the ground of claimant's possession of heroin or delivery of heroin, "in violation of ORS 475.992." However, because claimant had already been convicted of possession of a controlled substance in violation of ORS 475.992, *Mituniewicz*, 125 Or App at 43, the argument that the delivery charge has different elements than the possession charge is foreclosed by *$405,089.23 U.S. Currency*. City's pleadings in the forfeiture proceeding allege claimant's violation of ORS 475.992 as one ground for the forfeiture, and, as in *Sherrett*, it is immaterial that City could have constructed the forfeiture case to omit that allegation.

However, that result does not follow when the effect of the reversal of defendant's conviction is addressed. Double jeopardy does not preclude the government from retrying a defendant whose conviction is set aside because of an error in

the proceedings. *United States v. Tateo*, 377 US 463, 465, 84 S Ct 1587, 12 L Ed 2d 448 (1964); *cf. Burks v. United States*, 437 US 1, 98 S Ct 2141, 57 L Ed 2d 1 (1978) (double jeopardy bars retrial of reversal based on evidentiary insufficiency). There are no limitations whatsoever on the power to retry a defendant who has succeeded in getting his first conviction set aside. *Pearce*, 395 US at 720;[9] *see also Green*, 355 US at 189 (a defendant can be tried a second time for an offense when his prior conviction for that same offense has been set aside on appeal). A reversal and remand of a criminal conviction vitiates the jeopardy appurtenant to the first trial. *State v. Holmes*, 22 Or App 23, 29, 537 P2d 566 (1975); *see also State v. Unsworth*, 240 Or 453, 461, 402 P2d 507 (1965), *cert den* 382 US 1014 (1966).

In his dissent, Judge Haselton concludes that, irrespective of the result of claimant's appeal of his criminal conviction, jeopardy attached when the jury was impaneled in the criminal trial, and, therefore, double jeopardy precluded prosecuting the forfeiture. His dissent relies on the protection against multiple prosecutions for the same offense afforded by the Double Jeopardy Clause and finds "persuasive" the reasoning of the Ninth Circuit in *$405,089.23 U.S. Currency*. 140 Or App at 545.

---

[9] We applied the holding in *Pearce* in *State v. Gaylor*, 19 Or App 154, 527 P2d 4 (1974). The defendant had appealed his convictions on two counts of negligent homicide. We had previously reversed his conviction for negligent homicide in *State v. Gaylor*, 12 Or App 544, 508 P2d 250 (1973). The defendant's first conviction was brought on a single-count indictment alleging the death of one person. 19 Or App at 156. The defendant argued that the double jeopardy clauses of the federal and Oregon constitutions were violated when the case was resubmitted to the grand jury following the reversal and remand of his conviction and a new indictment brought with an additional charge. Both indictments were based on the same incident. We rejected the defendant's argument:

"In *State v. Jones*, 240 Or 546, 402 P2d 738 (1965), our Supreme Court observed:

"'[I]t is settled in this state that if jeopardy is properly annulled for any reason, including the reasons set forth in ORS 135.890, the proceedings stand upon the same footing as if the defendant had never been placed in jeopardy. *City of Portland v. Stevens*, 180 Or 514, 178 P2d 175 (1947).' 240 Or at 548." *Gaylor*, 19 Or App at 159-60.

We noted in *Gaylor* that *former* ORS 135.890 was repealed and "reincorporated" as part of ORS 131.525, which provides, in part, that a previous prosecution is not a bar to a subsequent prosecution when the defendant has waived, by an appeal, the right to object to termination of a prosecution.

The protection against multiple punishments historically has been viewed as protecting against a second criminal trial and possible conviction.[10] The Ninth Circuit meshed the protection against multiple punishments with the protection against multiple proceedings when it concluded that, under its reading of *Austin* and *Halper*, if a forfeiture statute constitutes "punishment," double jeopardy requires that "a criminal prosecution and a forfeiture action based on the same offense must now be brought in the same proceeding— that is, the same indictment[.]" *$405,089.23 U.S. Currency*, 33 F3d at 1222.

■ Although not so stated, the Ninth Circuit's analysis views the forfeiture proceeding as a separate *criminal* proceeding leading to multiple punishment. That is also the logical conclusion of the dissent's position, which objects, as did the Ninth Circuit, to claimant's being required to respond on separate procedural fronts. However, traditionally, having to *respond* to a complaint for civil forfeiture has not, by itself, triggered double jeopardy protections against multiple *proceedings*. We are not persuaded, as are Judge Haselton and the Ninth Circuit, that *Austin* and *Halper*, which were decided under the multiple punishment prong of the double jeopardy analysis, preclude the government from prosecuting a separate civil forfeiture proceeding.[11]

Be that as it may, in *$405,089.23 U.S. Currency*, there was no issue regarding double jeopardy implications when a conviction has been reversed. In his dissent, Judge Haselton apparently finds reversal irrelevant because jeopardy from the criminal prosecution continued at the time of the forfeiture proceeding. That dissent does not explain, however, the effect of the reversal. It states that jeopardy cannot be "somehow retroactively annulled," 140 Or App at 544, but

---

[10] The United States Supreme Court reiterated as recently as *Halper*, 490 US at 440:

"This Court many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense *after acquittal*; a second prosecution for the same offense *after conviction*; and multiple punishments for the same offense." (Emphasis supplied.)

[11] The Ninth Circuit's reasoning has not met with universal acceptance. *See United States v. Salinas*, 65 F3d 551, 554 (6th Cir 1995).

nonetheless recognizes that the reversal of claimant's conviction here means that he can be retried. It also acknowledges that, in that situation, the state might be able to elect to abandon a criminal prosecution and "for the first time, pursue forfeiture."[12] *Id.* at 544 n 2. We fail to see how those further proceedings could occur unless the jeopardy from the criminal proceeding has been "retroactively annulled." Judge Haselton's holding also would leave claimant subject to yet further proceedings of either a criminal trial or a second forfeiture, thereby defeating the dissent's desire to shield him from multiple prosecutions. In short, the jeopardy from the criminal prosecution here was vitiated, claimant has not received multiple punishments for the same offense, and the dissent does not answer why the forfeiture judgment here must be reversed.

Claimant next contends that the Act violates the Sixth Amendment and Article I, section 11, of the Oregon Constitution by depriving claimant of the protections due a defendant in a criminal prosecution. He acknowledges that the legislature is free to define and enforce obligatory conduct by other than criminal law, limited only by the state and federal constitutions. *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 100, 570 P2d 52 (1977). He argues, however, that applying the indicia used to determine whether a proceeding is a criminal prosecution as set out in *Brown*[13] demonstrates that the Act is a criminal proceeding. He argues that, "[if] civil forfeiture is punishment for purposes of the Eighth Amendment [under *Austin*], it must be punishment for purposes of the Sixth Amendment, and, as such, must be accompanied by the entire panoply of rights guaranteed a defendant in a criminal case."

Before *Austin*, the Oregon Supreme Court had discussed what rights were required in a forfeiture proceeding. In *State v. Curran*, 291 Or 119, 628 P2d 1198 (1981), the

---

[12] It finds that it could be that the state would be bound to pursue the criminal matter, instead of being permitted to pursue a forfeiture. It does not, however, contend that that result is compelled by double jeopardy.

[13] Those indicia are: type of offense, penalty, collateral consequences, punitive significance, and arrest and detention.

defendant had been convicted of unlawful possession of cocaine. ORS 167.247(2)[14] allowed forfeiture on the conviction of a person discovered in the act of transporting controlled substances, even though transportation of a controlled substance was not, itself, a crime. The state sought forfeiture of a motor vehicle allegedly belonging to the defendant. 291 Or at 129-30. The defendant argued that the *in rem* forfeiture proceeding was criminal. On appeal,

"[he] has argued that the absence of any procedure for effectuating forfeiture in the Code of Criminal Procedure makes the proceedings actually used a nullity. The premise for that position is that forfeiture is a criminal proceeding.

"\* \* \* \* \*

"Defendant has argued that despite their designation as civil actions, forfeiture proceedings should be subject to the Code of Criminal Procedure because a forfeiture is not truly civil but is like a fine and is an additional penalty for the charge. In support of this proposition he cites *United States v. U.S. Coin and Currency*, [401 US 715, 91 S Ct 1041, 28 L Ed 2d 434 (1971)]. The precise language from *U.S. Coin* reads:

" 'But, as *Boyd v. United States*, 116 U.S. 616, 634 (1886), makes clear, "proceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of offenses committed by him*, though they may be civil in form, are in their nature criminal." ' (Emphasis ours.)

"401 US at 718. What *U.S. Coin* makes clear is that while the effect of a forfeiture may be criminal in nature, the form of the forfeiture proceeding is essentially civil. This is consistent with the United States Supreme Court's continued disinclination to apply the full panoply of criminal procedural safeguards to forfeiture proceedings." *Id.* at 127-28 (emphasis in original; footnotes omitted).

---

[14] ORS 167.247(2) provides, in part:

"Any boat, vehicle, or other conveyance used by or with the knowledge of the owner, operator or person in charge thereof for the unlawful transportation or concealment of controlled substances shall be forfeited to the state in the same manner and with like effect as provided [for forfeiture of vehicles used in transporting alcoholic liquors in violation of law]."

That disinclination of the United States Supreme Court continued in *Austin*. The court noted that the text of the Eighth Amendment is not limited to criminal cases, 509 US at 608, and the court formulated the question before it, not as whether the forfeiture was civil or criminal but as whether it was punishment. *Id.* at 610. Although the court held that forfeiture was punishment and subject to the Excessive Fines Clause of the Eighth Amendment, it did not conclude that result required the full panoply of criminal protections urged by claimant. Rather, consistent with its earlier holdings, it held that the constitutional protections that it has held to apply to civil forfeiture proceedings adhere, in general, to the distinction in the Bill of Rights between provisions that are limited to criminal proceedings and provisions that are not. *Id.* at 608 n 4.

In *Curran*, the Oregon Supreme Court also recognized the punitive nature of forfeiture but held that the forfeiture proceeding was not one in a "criminal action," 291 Or at 121 n 3, and rejected the defendant's position that the forfeiture proceedings were a "nullity" for want of a procedure prescribed by the Code of Criminal Procedure. *Id.* at 130. The court agreed with the defendant that he had a right to a jury trial when "issues of fact germane to the forfeiture were not resolved in the underlying criminal action." *Id.* at 133. That right, however, was under Article I, section 17, which guarantees a right to jury trial in civil cases.[15]

---

[15] In *State v. 1920 Studebaker Touring Car, et al*, 120 Or 254, 271, 251 P 701 (1926), the court had held that an "innocent owner" was entitled to a jury trial under Article I, section 17. In that case, a car belonging to Nona Heffling was forfeited to the state because her husband, while driving the car, had carried intoxicating liquor. The grand jury had not indicted the husband and the wife had no knowledge of her husband's actions. The Supreme Court held that the wife was entitled to a jury trial under Article I, section 17:

"[W]here as here, the lawful property of an innocent person may be forfeited to the state without the previous conviction of anyone, and without the opportunity of a jury trial at any stage of the proceedings, we think the act in so far as it provides that the forfeiture shall be tried by the court without the intervention of a jury is unconstitutional and void, because denying a trial by jury as guaranteed by the state Constitution. A majority of the court are of the opinion that in so far as the statute directs that a forfeiture may be had without a trial by jury, the direction is merely surplusage, and beyond the power of the legislature to enact, but that the remainder of the act should stand." *Id.* at 271.

Although *Curran* was decided after *Brown* and the court did not discuss the *Brown* indicia, it does not necessarily follow that those indicia cannot apply to this statutory *in rem* forfeiture.[16] However, there is an important distinction between the challenged enactment in *Brown* and an *in rem* forfeiture. In *Brown*, the court was considering the legislative attempt to decriminalize a first offense for driving under the influence of intoxicants. Although a traffic offense is "largely a 20th-century phenomenon," 280 Or at 103, nonetheless the offense *previously* had been viewed as criminal. Claimant's contention here is the opposite: He argues that a proceeding with a long history of being viewed as civil is criminal. *See State v. 1920 Studebaker Touring Car, et al*, 120 Or 254, 251 P 701 (1927); Walter J. Van Eck, *The New Oregon Civil Forfeiture Law*, 26 Will L Rev 449 (1990).

■   Claimant contends that, because the "type of offenses" covered by the Act—drug possession and sale—are unquestionably criminal, the Act "merely seeks to impose punishment without proving the conduct beyond a reasonable doubt or in conjunction with the other rights due a defendant in a criminal prosecution." However, *in rem* forfeitures have traditionally reached property even when the owner of the property was free of wrongdoing. *See 1920 Studebaker Touring Car*; Van Eck, 26 Will L Rev at 453. The *Curran* court acknowledged the "punitive significance" inherent in a forfeiture proceeding but rejected the argument that, therefore, the proceeding was criminal. Claimant has not demonstrated how the punitive significance of the Act here differs from the punitive significance recognized by the *Curran* court so as to make this proceeding criminal.

In passing, claimant mentions the *Brown* factor of "collateral consequences" but makes no argument as to how

---

[16] The legislature sought to have the Act viewed as remedial, not punitive, declaring in Section 1(5) that "the application of any remedy under this Act is intended to be remedial and not punitive * * *." However, avoiding the term "criminal" does not govern whether the result of the enactment is, indeed, criminal. *Brown*, 280 Or at 102. The United States Supreme Court has also noted that, "even those protections associated with criminal cases may apply to a civil forfeiture proceeding if it is so punitive that the proceeding must reasonably be considered criminal." *Austin*, 509 US at 608 n 4.

the Act has that effect. He concedes that "arrest and deten-
tion" are not applicable in the forfeiture proceeding itself.
The only argument as to the applicability in the Act of the
"penalty" factor of *Brown* is that, by authorizing forfeiture
"without dollar limit of any kind," the penalty factor "weighs
in favor" of finding the statute a criminal regulation.

■　　Under the Act, the forfeited property must be related
to the prohibited conduct, and a lack of a dollar limit on that
property is not different from other *in rem* enactments,
including ORS 167.247(2), which the *Curran* court consid-
ered. Although much of the property that may be forfeited
under the Act is potentially of large value, *see* Section 3, tra-
ditionally civil forfeitures could result in harsh penalties.
*State v. Foley*, 125 Or App 423, 428, 865 P2d 465 (1993). A
harsh penalty is consistent with the traditional purpose of
forfeiture not only to punish criminal activity but also to
make it unprofitable. *Curran*, 291 Or at 127. We conclude
that the statute's authorizing of a penalty without dollar
limit is not, in itself, a sufficient basis from which to conclude
that the proceeding is criminal.[17] Claimant has not shown
that the Act is a criminal proceeding that requires the full
panoply of constitutional criminal protections.[18]

Affirmed.

**EDMONDS, J.,** concurring.

Pretrial, claimant moved to dismiss the city's action
in part on the ground that it violated claimant's right against
double jeopardy under Article I, section 12, of the Oregon

---

[17] Claimant also argues that the Act violates the Due Process Clause. Claimant
does not show where he made that argument to the trial court, and we have been
unable to determine that he did.

[18] Claimant argues that the statute violates the constitutional prohibitions
against excessive fines. He did not demonstrate where he made that argument to
the trial court. Under *Austin*, decided in June 1993, after judgment had been
entered in this case and while appeal was pending, a civil forfeiture is subject to the
Excessive Fines clause of the Eighth Amendment.

We will not consider claimant's argument made for the first time on appeal. We
note, however, that in August 1993, the Oregon legislature enacted provisions that
*establish a procedure for a mitigation hearing on a forfeiture under the Act*. Or
Laws 1993, ch 699, §§ 13, 14, and 15. Under those sections, a claimant may file a
motion for a hearing. After applying the factors set out in section 15, the trial court
enters written findings and may fashion a remedy to ensure that the forfeiture is
not excessive. Section 13(5).

Constitution and the Fifth Amendment to the United States Constitution, because it exposed him to multiple punishments for the same offense.[1] Claimant argued before the trial court:

"In the instant case, claimant has already been tried and convicted of the conduct upon which the instant forfeiture is predicated. He has been sentenced for that offense. Both the Oregon and United States Constitution prohibit his being placed again in jeopardy for that offense. Claimant is entitled to dismissal because the instant prosecution violates his rights against double jeopardy."

The trial court denied claimant's motion, and this appeal resulted. In *United States v. Dixon*, 509 US 688, 113 S Ct 2849, 2856, 125 L Ed 2d 556 (1993), the court held that double jeopardy protection applies both to successive punishments and to successive prosecutions for the same criminal offense. The court stated:

"In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the 'Blockburger' test [*Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 182, 76 L Ed 306 (1932)], inquires whether each offense contains an element not contained in the other. If not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." (Citation omitted.)

In this case, claimant offered evidence that he had been prosecuted for possession of heroin in Washington County.[2] The city's complaint in this civil forfeiture case alleged, in part:

---

[1] Claimant makes the same argument under both provisions and does not argue that a different test applies under the Oregon Constitution, nor does he make a double or former jeopardy argument under any Oregon statute.

[2] In *State v. Mituniewicz*, 125 Or App 41, 864 P2d 1359 (1993), claimant was charged with the possession of a small amount of tar heroin that was seized from his pocket after he was arrested for felony driving while revoked in Washington County. We held that the search and seizure were not reasonably related to the reason for the claimant's arrest, that the search was not incident to a valid inventory search and that the inevitable discovery rule did not apply. Accordingly, we reversed the conviction for possession of the tar heroin after the hearing in this case was held.

"4.

"On or about May 11, 1991, in the County of Washington, State of Oregon, authorized agents of the Lake Oswego Police Department lawfully seized defendants, \$23,232.23 in cash and Motorola pager, on behalf of plaintiff, City of Lake Oswego, under the authority of 1989 Oregon Laws, Ch. 791, pursuant to arrest, and probable cause.

"5.

"Defendant property was in the possession of Rodney Steven Mituniewicz, claimant, at the time of seizure.

"6.

"On or about May 11, 1991, defendants, \$23,232.23 in cash and Motorola pager, were used and/or intended to be used to commit and facilitate the:

"1) possession of heroin, a controlled substance; and/or

"2) delivery of heroin[3]

"in violation of ORS 475.992 and subject to civil forfeiture under 1989 Oregon Laws, Ch. 791. * * *"

At the hearing, the city offered evidence that claimant was stopped by a police officer on Interstate 5 for exceeding the maximum speed limit. In the course of the investigation, claimant was observed stuffing bundles of cash down the front of his pants. The officer requested permission to search claimant, and claimant advised the officer that he had \$23,000 and that if he was going to jail, he did not want to leave the money in the car. The officer discovered that claimant's driver's license was revoked and placed him under arrest for driving while revoked. In a search incident to an arrest, the officer discovered a small, clear plastic wrap with a dark brown substance. The dark brown substance was subsequently identified as tar heroin. Claimant admitted to the police officers that the substance was his. Later, during an interview with the police, claimant told the officers that the \$23,000 in cash came from a hispanic male named Jose who

---

[3] The majority is correct when it holds that the allegation of delivery of heroin and the proof of delivery of cocaine did not cause claimant any prejudice in defending the forfeiture claim. The city's evidence came from claimant's own admission.

lived in the Vancouver, Washington, area, that he had previously delivered a kilogram of cocaine to Jose, and that the $23,000 was the purchase price for the cocaine. When he was stopped, claimant said he was in the process of taking the $23,000 to another person in the Wilsonville area. There is no evidence that the small amount of tar heroin that defendant had in his possession was somehow related to the cocaine transaction.

It is apparent from the evidence elicited at the pretrial hearing that the possession of the tar heroin on May 11, 1991, for which claimant was criminally charged, is a discrete criminal act from the use of the cash and pager involved in the delivery of cocaine, the conduct at issue in the forfeiture proceeding. Thus, the cash and the pager were directly related to claimant's prior *delivery* of a *different* controlled substance. Moreover, claimant was never charged in the Washington County criminal case with the delivery of a controlled substance. Because the forfeiture proceeding involved different conduct than the conduct that was the subject of the previous criminal action, the $23,232.23 and the pager were subject to forfeiture, no double jeopardy attached. Possession of a controlled substance and delivery of a controlled substance are separate offenses involving distinct elements.[4] The application of the *Blockburger* "same-elements" test[5]

---

[4] *See State v. Sargent*, 110 Or App 194, 822 P2d 726 (1991) (discussing the differing elements of delivery and possession of a controlled substance and concluding that the two do not merge as a matter of law).

[5] The *Blockburger* test continues to be the test employed by other courts. For instance, in *U.S. v. Chick*, 61 F3d 682 (9th Cir 1995), the defendant/claimant's surveillance equipment was forfeited in a civil proceeding because the equipment was used for unlawful interception of electronic communications. After the forfeiture proceeding defendant/claimant was charged with selling and conspiring to sell illegally modified satellite descramblers. The defendant/claimant argued that the charges placed him in double jeopardy. The 9th Circuit applied the *Blockburger* same-elements test and concluded:

> "The civil forfeiture proceeding only required proof that the seized electronic equipment was used to intercept electronic communications in violation of 18 U.S.C. § 2511. The civil forfeiture proceeding did not require proof that Chick conspired to assemble, possess or sell satellite descrambler modules *or* that Chick sold illegally modified satellite descramblers. Therefore, applying the *'Blockburger* test' to the record before us, *we find that the counts contained in the superseding indictment were based on distinctly different offenses from the offense which underlies the civil forfeiture action involving electronic equipment belonging to Chick.*" 61 F3d at 687. (Footnotes omitted; emphasis supplied.)

*See also U.S. v. Sherrett*, 877 F Supp 519 (D Or 1995).

makes it clear under these circumstances that the Double Jeopardy Clause of the Fifth Amendment and Article I, section 12, are not implicated.

For this reason, I submit that it is unnecessary to reach the issue which the majority and the dissents consider dispositive. It would appear that the majority agrees that double jeopardy does not apply when the offense on which the double jeopardy claim is based does not contain the same legal elements as the previous prosecution. However, it states that

> "the argument that the delivery charge has different elements than the possession charge is foreclosed by [*United States v. $405,089.23 U.S. Currency*, 33 F3d 1210 (9th Cir 1994)]. City's pleadings in the forfeiture proceeding allege claimant's violation of ORS 475.992 as one ground for the forfeiture, and, as in [*United States v. Sherett*, 877 F Supp 519 (D or 1995)], it is immaterial that City could have constructed the forfeiture case to omit that allegation." 140 Or App at 531.

*$405,089.23 U.S. Currency* is inapposite. It did not address a situation in which the forfeiture proceeding was based on different conduct than the conduct that was the subject of the earlier criminal prosecution. That court stated:

> "The forfeiture complaint in this case was based on precisely the same conduct addressed in the claimant's criminal case, and it sought to forfeit title to the claimants' property on the basis of precisely the same violations of the same statutes. In short, this civil forfeiture action and the claimants' criminal prosecution addressed the identical violations of the identical laws[.]" *Id*. at 1216.

Similarly, *Sherrett* involved a situation in which *some* of the allegations in an earlier forfeiture action were identical to the charges in the criminal indictment. The court held that double jeopardy was implicated only as to the charges that were duplicated, and that the necessary predicate for double jeopardy arising out of either multiple prosecutions or multiple punishment is that the elements of the criminal charges and the allegations in the forfeiture complaint must be the same. When that predicate is absent as here, the rule is not implicated. Consequently, the majority

and the dissents both err by focusing on issues not necessary to the determination of this case.

For that reason, I concur only in the result that the majority reaches.

**HASELTON, J.,** dissenting.

The ultimate reversal of claimant's criminal conviction did not somehow retroactively "vitiate" the jeopardy attending the prior criminal prosecution. Consequently, because forfeiture pursuant to Oregon Laws 1989, chapter 791, *as amended by* Oregon Laws 1991, chapter 934,[1] constitutes "punishment" for double jeopardy purposes, and because claimant had previously been subjected to trial and punishment for the same conduct, the forfeiture judgment must be reversed.

It is useful, at the outset, to reiterate the salient procedural facts:

(1) In June 1992, claimant was convicted of, *inter alia*, possession of a controlled substance.

(2) Claimant appealed that conviction.

(3) In August 1992, while claimant's appeal was pending, and before that appeal was adjudicated, petitioner prosecuted this forfeiture proceeding and, in September 1992, obtained the judgment that is the subject of this appeal.

(4) In December 1993, after the entry of a forfeiture judgment, this court reversed and remanded claimant's criminal conviction. *State v. Mituniewicz,* 125 Or App 41, 864 P2d 1359 (1993).

Thus, after the criminal conviction and before the reversal of that conviction, claimant was subjected to forfeiture based on the same facts underlying his criminal conviction.

The majority acknowledges that the purpose of the Double Jeopardy Clause is to "protect an individual from being subjected to the hazards of trial and possible conviction

---

[1] Those chapters were inserted, but not codified, at the beginning of ORS chapter 166.

more than once for an alleged offense." 140 Or App at 528, citing *Green v. United States*, 355 US 184, 187, 78 S Ct 221, 2 L Ed 2d 199 (1957). The majority also assumes, without deciding, that forfeiture is "punishment" for double jeopardy purposes. 140 Or App at 529-30. Nonetheless, the majority concludes that the forfeiture proceeding did not run afoul of constitutional double jeopardy protections because "[a] reversal and remand of a criminal conviction vitiates the jeopardy appurtenant to the first trial." 140 Or App at 531-32.

I disagree. Even if appellate reversal of the criminal conviction "vitiated" or "nullified" jeopardy, that effect could be prospective only. I know of no Oregon or federal authority—and the majority points to none—suggesting that jeopardy can be somehow retroactively annulled. The simple fact is that jeopardy attached from the time the jury was impaneled in claimant's criminal trial, *see Crist v. Bretz*, 437 US 28, 57 L Ed 2d 24, 98 S Ct 2156 (1978); that it continued through claimant's conviction; and that it continued as his appeal was pending. Thus, at the time of the forfeiture proceeding and judgment, jeopardy from the criminal prosecution still existed. The "slate" has not yet been "wiped clean." *See North Carolina v. Pearce*, 395 US 711, 721, 89 S Ct 2072, 23 L Ed 2d 656 (1969), *overruled on other grounds Alabama v. Smith*, 490 US 794, 109 S Ct 2201, 104 L Ed 2d 865 (1989). The subsequent appellate reversal did not, and could not, alter that contemporaneous reality.[2]

The question for double jeopardy purposes reduces, then, to whether the forfeiture proceeding entailed the potential for punishment within the meaning of the Fifth Amendment. If it did, jeopardy from the criminal prosecution and

---

[2] The authority that the majority invokes is not to the contrary. *See, e.g., Pearce*; *State v. Holmes*, 22 Or App 23, 537 P2d 566 (1975); *State v. Gaylor*, 19 Or App 154, 527 P2d 4 (1974). At most, those cases suggest that, after a conviction is reversed, jeopardy is nullified and "the slate wiped clean" so the state may retry the defendant. *Pearce*, 395 US at 721.

It is unclear whether those cases permit the state, after an appellate reversal and remand, to elect to abandon the criminal prosecution and, for the first time, pursue forfeiture. It may well be that, having elected to pursue a criminal prosecution, the state, on appellate reversal and remand, is bound by that election and must either reinstate the prosecution or abandon the matter entirely, without resort to other punitive options.

jeopardy from the forfeiture proceeding existed simultaneously. *Ergo*, double jeopardy.

Forfeiture of the sort imposed here is "punishment" triggering the Double Jeopardy Clause. Oregon's forfeiture legislation was substantially modeled on the federal forfeiture statutes, 19 USC § 1615 *et seq*. *See* Note, *The New Oregon Civil Forfeiture Law*, 26 Will L Rev 449 (1990). The appropriate characterization of the federal forfeiture statutes for double jeopardy purposes is, of course, a matter of deep and passionate dispute among the courts and commentators. *Compare United States v. $405,089.23 U.S. Currency*, 33 F3d 1210 (9th Cir 1994), *amended on denial of reh'g* 56 F3d 41 (9th Cir 1995), *cert granted U.S. v. Ursery*, 116 S Ct 762 (1996), *with United States v. Salinas*, 65 F3d 551 (6th Cir 1995); *United States v. Tilley*, 18 F3d 295 (5th Cir 1994). A detailed recitation of my own views would add little. For present purposes, it suffices to say that, on balance, I find the Ninth Circuit's views, as expressed in *$405,089.23 U.S. Currency*, 33 F3d at 1222, to be persuasive:

> "As the Supreme Court did in *Austin* [*v. United States*, 509 US 602, 113 S Ct 2801, 125 L Ed 488 (1993)], we conclude that the forfeiture statutes at issue here do not serve *solely* a remedial purpose. Accordingly, 'even assuming that [these statutes] serve *some* remedial purpose, the Government's argument must fail.' *Id*. 509 US at 621, 113 S Ct at 2812 (emphasis added). The civil forfeiture the government seeks to impose constitutes 'punishment.' Because the government is attempting to exact this form of 'punishment' in a separate proceeding 'from the claimants' criminal trials, this action is barred by the Double Jeopardy Clause." (Emphasis in original; some brackets supplied.)[3]

I respectfully dissent.

Riggs, Leeson, and Armstrong, JJ., join in this dissent.

---

[3] Treating forfeiture as punishment for double jeopardy purposes will not hamstring effective law enforcement. I am unaware of any legal or practical impediments to amending pertinent criminal statutes so as to permit the state to seek forfeiture in the context of a criminal prosecution.

**ARMSTRONG, J.,** dissenting.

I join in Judge Haselton's dissent. I write separately to point out several issues that the case raises but does not decide.

First, the parties and the court have treated the double jeopardy issues exclusively under the federal "same elements" test of *Blockburger v. United States*, 284 US 299, 52 S Ct 180, 76 L Ed 306 (1932). However, both our Supreme Court, under Article I, section 12, of the Oregon Constitution, and our legislature have rejected that test in favor of the "same transaction" test. *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972); ORS 131.515. The analysis, and possibly the result, would thus be different under state law from what they are under federal law. Because claimant did not separately analyze the state law issue, I will not now attempt to apply the "same transaction" test to these circumstances.

Second, claimant argues at length that, under the analysis of *Brown v. Multnomah County District Court*, 280 Or 95, 570 P2d 52 (1977), he was entitled to full criminal procedural protections in this case. However, in the later case of *State v. Curran*, 291 Or 119, 128-29, 628 P2d 1198 (1981), the court held that, while a forfeiture may be criminal in nature, it is essentially civil in form. Although the Supreme Court did not expressly consider the effect of *Brown* in its decision in *Curran*, *Curran* forecloses claimant's argument until that court revisits the issue.

Finally, I believe that the Supreme Court should revisit the issue, in part because neither *Curran* nor the federal cases on which it relied consider the limited nature of *state* forfeiture proceedings at the time of the adoption of the Oregon Constitution. So far as I am aware, the only forfeitures, other than forfeitures of things that were contraband in themselves, that *states* enforced in 1859 arose from the enforcement of revenue laws; they involved the forfeiture of property as a recompense for violations of laws that, if obeyed, would have provided income to the state in a different (and more regular) fashion. To the extent that states enforced forfeitures for the commission of crimes, the crimes involved were related to the raising of revenue. In contrast,

the *federal* government did enforce forfeitures for the commission of crimes that were unrelated to raising revenue. However, those crimes were crimes that generally were committed on the high seas, such as piracy, and thus were within the federal government's exclusive admiralty jurisdiction. *See, e.g., United States v. Brig Malek Adhel*, 43 US (2 How) 210, 11 L Ed 239 (1844).

This history suggests that, to the extent that the Supreme Court decided *Curran* in the belief that forfeiture proceedings were traditionally civil and thus constitute an historical exception to the criteria that would otherwise determine what is a criminal prosecution under the Oregon Constitution, it may not have fully recognized the issues involved. The Oregon Constitution, properly understood, may not permit civil forfeiture proceedings that are not related to the raising of revenue or to the forfeiture of things that are contraband *per se*. Because *Curran* remains in effect and binds this court, it is unnecessary to pursue this point further at this time.